# AT THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI

Tracy Miller Arnold

        Plaintiff,

vs.

City of Guntown, Andrew Stuart, in their individual and official capacities

        Defendants,

Cause #

        1:25-CV-24-GHD-DAS

## COMPLAINT PURSUANT TO 42 U.S.C. § 1983

### 1. JURISDICTION AND VENUE

1.1. This action is brought pursuant to the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution, and pursuant to 42 U.S.C § 1983;

1.2. Title 28 U.S.C. § 1331 and 28 U.S.C. § 1343 provide federal question jurisdiction over all federal claims;

1.3. This action is timely as Miss. Code Ann. § 15-1-49(1) sets a three year statute of limitations for personal injury;

1.4. Venue is proper in this Court under 28 U.S.C § 1391(b)(1),(2) because Defendants reside within this district and the events occurred within this district;

1.5. The unlawful acts and practices alleged herein occurred within the interior boarders of the City of Guntown and County of Lee Mississippi, which are within this judicial district;

1.6. The unlawful practices alleged herein represent an ongoing pattern of constitutional violations that continue to pose a threat of irreparable harm to Plaintiff and others similarly situated, warranting this Court's exercise of equitable powers;

## 2. PARTIES

2.1. Plaintiff, Tracy Miller Arnold, lives in Tennessee and can be mailed at P.O. Box 864, Savannah TN 38372;

2.2. Defendant, City of Guntown, is a duly organized municipality in the State of Mississippi who may be served by delivering a copy of the summons and of the complaint to the City Clerk, at 1589 Main Street Guntown, Mississippi 38849;

2.3. Defendant, Andrew Stuart, an individual and citizen of Mississippi may be served with process at 359 North Spring St Tupelo, MS 38804;

2.4. At all relevant times, Defendant Andrew Stuart was acting as the final policymaker for the City of Guntown regarding litigation matters, with authority to establish and implement municipal policies regarding prosecution and enforcement of municipal matters;

## 3. INTRODUCTION

3.1. This civil rights action arises under 42 U.S.C. § 1983 and the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution. The Defendants engaged in a systematic pattern of constitutional violations, demonstrating deliberate indifference to fundamental rights through institutional failures, retaliation, and vindictive prosecution spanning five years;

3.2. The violations began with failure to provide constitutionally required notice of charges, escalated to retaliation for exercising appeal rights, and culminated in a pattern of harassment through unreasonable arrest warrants and collection efforts, issued from the City's Court without jurisdiction, while the case remained under appeal. The Plaintiff informed the Defendants of the arrest warrants and collection efforts being mailed to her and reminded the Defendants that the case was still active on appeal with no final judgment. The City admitted to having no system to track appealed cases, demonstrating deliberate indifference to constitutional rights at an institutional level and Defendants took no action to stop the arrest warrants or collection efforts;

3.3. After the Court ordered amendments to properly inform Plaintiff of charges, the City ignored the order for five years, then when Plaintiff informed the Court, that had jurisdiction of the constitutional violations, the City responded by motioning to set trial, again ignoring the constitutional violations;

3.4. The constitutional violations were compounded by the City's policy of prioritizing revenue generation over constitutional rights, culminating in the conscience-shocking issuance of arrest warrants and pursuit of collections while lacking jurisdiction during

appeal. This deliberate disregard for both court orders and Plaintiff's notifications about ongoing constitutional violations, while maintaining void warrants despite admitting they had no system to track appealed cases, caused severe emotional distress and constitutional injury to Plaintiff, fundamentally destroying her trust in government institutions;

## 4. FACTS

### 4.1. GUNTOWN MUNICIPAL COURT

4.1.1. In 2017, the City of Guntown, hereinafter the City, initiated suit against Plaintiff;

4.1.2. The City has stated that in order to file paperwork in the Guntown Municipal court that they would need to ask Andrew first;

4.1.3. Andrew Stuart, the City's Attorney, is the City's final policy maker in regards to anything related to litigation;

4.1.4. In the Municipal Court the City did not move for jail time;

### 4.2. TRIAL DE NOVO IN LEE COUNTY COURT

4.2.1. The Plaintiff timely exercised her right to a trial de novo;

4.2.2. Mississippi Courts treat trial de novo as if trial had never taken place;

4.2.3. Mississippi Courts rule that trial de novo vacates and voids a judgment;

4.2.4. On April 11th, 2018, right before the hearing, the City offered Plaintiff to pay the cheapest charge to make this go away;

4.2.5. Plaintiff responded by saying she is willing to take this case all the way to the U. S. Supreme Court;

4.2.6. On April 11th, 2018, an administrative and motion hearing was held in the Lee County Courtroom;

4.2.7. Andrew Stuart appeared and represented the City of Guntown;

4.2.8. When the court asked if the City is pursuing jail time the City responded "Under the circumstances, yes";

4.2.9. The City asked for enhanced sentencing by requesting jail-time without any changes to facts nor circumstances, other than exercising her right to trial de novo;

4.2.10. At the hearing, the County Court determined that, Plaintiff, Tracy was not properly notified of the charges and thus her due process rights are at issue;

4.2.11. The County Court ordered the City to amend the complaints, and file those amendments with the court and to send a copy to the Plaintiff;

4.2.12. The County Court called the complaints insufficient and stated the court did not have jurisdiction;

4.2.13. The County Court explained to the City that the complaints did not inform the Plaintiff of the nature and cause of the accusations;

4.2.14. The City was ordered by the court to communicate with the Plaintiff;

### 4.3. POST-APRIL 2018 TRIAL DE NOVO HEARING

4.3.1. The Defendants did not respond to any of the Plaintiffs motions;

4.3.2. The Defendants did not communicate with the Plaintiff following the courts order to amend the complaints;

### 4.4. CASE OPEN IN LEE COUNTY COURT AWAITING VALID COMPLAINTS

4.4.1. In 2022, John Doe number 1 signed an affidavit alleging a crime sufficient for the arrest of the Plaintiff;

4.4.2. In 2022, John Doe number 2 submitted the arrest warrant into the Mississippi Criminal Information Center;

4.4.3. The City communicated and contracted with the third party debt collectors namely, AMS, concerning this alleged debt and active arrest;

### 4.5. JULY 2022 ARREST WARRANT NOTICE AND COLLECTION ATTEMPT

4.5.1. On or about July 6th, 2022, the City, by and through American Municipal Services, AMS, sent a July 2022 notice to the Plaintiff's Tennessee home address stating arrest warrants have been issued against her, see exhibit p1.1;

4.5.2. The July 2022 notice also alleged that the Plaintiff owes $1436.75, due immediately;

4.5.3. On or about July 2022, the Plaintiff made several phone calls to the City, Prosecutor and AMS to remind them that the case is active with no final judgment;

4.5.4. AMS told the Plaintiff to call the City;

4.5.5. The City informed Plaintiff that they had no method for tracking whether a case was on appeal;

4.5.6. The City instructed the Plaintiff to talk to Andrew Stuart, the City's prosecutor;

4.5.7. The City provided the Plaintiff with the City Prosecutor's contact information;

4.5.8. The Plaintiff did not receive any communications from the City's attorney regarding the notices;

### 4.6. OCTOBER 2022 ARREST WARRANT NOTICE AND COLLECTION ATTEMPT

4.6.1. On or about October 6th, 2022, the City, by and through AMS, sent an October 2022 notice to the Plaintiff's Tennessee home address stating arrest warrants have been issued against her, see exhibit p1.2;

4.6.2. The October 2022 notice also alleged that the Plaintiff owes $1436.75, due immediately;

4.6.3. On or about October 6th, 2022, the Plaintiff, again, made several phone calls to the City, Prosecutor and AMS, again, to remind them that the case is active with no final judgment;

4.6.4. AMS, again, told the Plaintiff to call the City;

4.6.5. The City, again, instructed the Plaintiff to talk to Andrew Stuart, the City's prosecutor;

4.6.6. The Plaintiff did not receive any communications from the City's attorney regarding the notices;

### 4.7. JANUARY 2023 ARREST WARRANT NOTICE AND COLLECTION ATTEMPT

4.7.1. On or about January 9th, 2023, the City, by and AMS, sent a January 2023 notice to the Plaintiff's Tennessee home address stating arrest warrants have been issued against her, see exhibit p1.3;

4.7.2. The January 2023 notice also alleged that the Plaintiff owes $1436.75, due immediately;

### 4.8. APRIL 2023 ESCALATED THREAT - VERY IMPORTANT NOTICE

4.8.1. On or about April 13th, 2023, the City, by and AMS, sent an April 2023 notice to the Plaintiff's Tennessee home address stating a judge could take additional actions against her, see exhibit p1.4;

4.8.2. The April 2023 notice also alleged that the Plaintiff owes $1436.75, due immediately;

4.8.3. On April 18, 2023 Plaintiff filed her Petition to Dismiss for Lack of Prosecution and Failure to Provide Due Process;

### 4.9. CITY'S MOTION TO SET CAUSE FOR TRIAL

4.9.1. Prosecution did not file a response to the Plaintiffs Motion to Dismiss;

4.9.2. On May 24th, 2023, the City filed a "Motion to Set the Matter For Trial", see exhibit p2;

4.9.3. The City motioned that since the 3 charges totaled less than 18 months of incarceration a bench trail was appropriate;

4.9.4. The City swore that it "knows of no reason why the cause should not be [tried] as soon as the calendar of the Court will permit.";

### 4.10. COUNTY COURT MEMORANDUM AND OPINION

4.10.1. On June 7th, 2023, the County Court wrote its "Memorandum Opinion", see exhibit p3, and determined the following:

    1. Plaintiff "has presented proof that the City has continually sent her notices demanding that she pay her outstanding fines as a result of these charges and according to the Notice, the City has issued arrest warrants for Tracy based on her failure to pay.";

    2. And that "this should not have happened as this matter is on appeal and has been for over 5 years". As such, "the City should not be attempting to collect these fines as there is no final order in the matter and any warrants for Tracy should be stricken immediately.";

    3. That Tracy has "demonstrated sufficient evidence of Anxiety and concern of the convicted party awaiting the outcome of appeal";

    4. "[T]hat more than 5 years passed with prosecution making no real attempt to advance the appeal";

    5. "While no time limit was set by the Court to file said amendments, the Court can only assume based on the current record that Guntown decided against filing the Amended Affidavits and thus, never reset the matter for trial - until the filing of its recent motion.";

    6. "[T]he Defendant was not properly notified of her charges and thus her due process rights are at issue";

4.10.2. The County Court gave the City of Guntown 10 days to provide proof that they filed amended affidavits and provided copies to the Plaintiff;

### 4.11. COUNTY COURT FINAL ORDER

4.11.1. On July 5th, 2023, the County Court filed the final order in the matter, see exhibit p4;

4.11.2. The Order stated "the City of Guntown has not filed any response required by the Memorandum Opinion filed June 8th 2023.";

4.11.3. The City did not appeal any of the County Court's orders;

4.11.4. The City did not motion the County Court for reconsideration;

### 4.12. POST DISMISSAL

4.12.1. On May 1, 2024, Plaintiff sent via certified mail a settlement offer to the City of Guntown, see exhibit p5.1-p5.2;

4.12.2. Specifically, the following individuals were sent the settlement letter which gave notice of municipal liability; Brent Lindsey (Mayor), Jeff Herring (Vice Mayor/Alderman), and each Alderman namely Daniel Davis, Teena Herring, Petey Hopkins and Zach White, see exhibits p5.3-p5.10;

4.12.3. To this day not a single policy maker has communicated with the Plaintiff in regard to settlement of the matter;

### 4.13. DAMAGES

4.13.1. Plaintiff experienced extreme anxiety and distress during the period between the court's order to amend the complaints in 2018 and the courts dismissal in 2023

4.13.2. The stress and anxiety caused by the legal proceedings significantly impacted Plaintiff's ability to parent effectively, leading to:

    1. Increased irritability and impatience with children;

    2. Difficulty providing adequate emotional support and attention to children;

    3. Strained relationships with children;

4.13.3. The stress and anxiety caused by the ongoing legal proceedings significantly strained Plaintiff's marriage;

4.13.4. Plaintiff experienced difficulty communicating effectively with her husband due to constant worry and irritability resulting from the legal proceedings;

4.13.5. Plaintiff's focus on the legal proceedings led to neglect of their marital responsibilities, including decreased intimacy, lack of household support and diminished quality time together;

4.13.6. The strain on the marital relationship resulted in increased arguments, decreased affection and consideration of separation;

4.13.7. The prolonged emotional distress caused by the Defendants' failure to timely pursue cases on a trial de novo appeal was debilitating, directly affecting the Plaintiff's mental health, relationships and daily life;

4.13.8. The Defendants' failure to train its employees on proper procedures for handling appealed cases, including the importance of accurate record-keeping, directly contributed to the harm suffered by the Plaintiff;

4.13.9. The Defendants' failure to maintain accurate records of de novo cases, including Plaintiff's case, directly resulted in prolonged emotional distress for Plaintiff.

4.13.10. The City's disregard for the court order to amend the complaint and communicate with Plaintiff caused significant anxiety and uncertainty, impacting Plaintiff's daily life and well-being;

4.13.11. Plaintiff experienced constant fear and anxiety due to the repeated threats of arrest and imprisonment based on the outstanding fines;

4.13.12. Plaintiff's sleep was severely disrupted due to constant worry about potential arrest and the impact on her family and livelihood;

4.13.13. Plaintiff experienced a significant loss of trust in the City government and the justice system due to the City's disregard for the ongoing appeal and issuance's of arrest warrants and continued attempts to collect fines;

4.13.14. Plaintiff became distrustful of law enforcement and avoided public spaces due to fear of arrest;

4.13.15. Plaintiff had significant anxiety because of Defendants' actions that drastically harmed her desire to become a paralegal and legal researcher not knowing if at any minute she could be in jail for up to a year.

4.13.16. The constant stress and anxiety caused by Defendants' actions led to social isolation, as Plaintiff withdrew from social activities and relationships;

4.13.17. The Plaintiff has to pass through the City of Guntown to see her Father, pick up her children and to visit her Sisters, Mother, Mother in Law, Great Grandmother and other family and friends;

4.13.18. Plaintiff avoided social gatherings due to fear of being arrested, leading to strained relationships with friends and family;

4.13.19. The constant pressure to pay fines on an open case created significant financial anxiety, further exacerbating emotional distress;

4.13.20. Defendants' actions and the prolonged legal battle significantly impacted Plaintiff's self-esteem, leading to feelings of helplessness, powerlessness, and worthlessness;

4.13.21. The City's continued pursuit of collection efforts and the threat of arrest, while the appeal was pending, caused Plaintiff to suffer from severe and ongoing emotional distress, including anxiety, insomnia, depression, social withdrawal, irritability and relationship issues;

## 4.14. DEFENDANT'S KNEW OR SHOULD HAVE KNOWN

4.14.1. The Defendants' deliberate indifference and reckless disregard to Plaintiff's well established rights caused the City to issue arrest warrants and attempt to collect over-due fines was the driving force to the damages incurred to Plaintiff;

4.14.2. The Defendants knew or should have known that upon being informed of these arrest warrants and notices for payment of outstanding fines while the case was on appeal pending a final decision that they had a duty to supervise or train their employees;

4.14.3. The Defendants knew or should have known that its employees lacked the train-ing necessary to handle appeals properly, and this lack of training resulted in the harm to the Plaintiff;

4.14.4. The Defendants had an obligation to ensure that its actions did not violate Plaintiff's due process rights, including the right to be free from arbitrary arrest or threats of arrest and the right to be heard;

4.14.5. The Defendants knew or should have known that issuing arrest warrants and pursuing debt collection without a final judgment in their favor would violate Plain-tiff's due process rights;

4.14.6. The Defendants had an obligation to comply with the Court's order to amend the complaints and communicate with the Plaintiff;

4.14.7. The Defendants knew or should have known that its failure to comply with the court order could have serious consequences;

4.14.8. The Defendants had an obligation to cease all collection efforts, including the issuance of arrest warrants, while there was no final judgment in the matter;

4.14.9. The Defendants knew or should have known that continuing collection efforts during an appeal would create undue stress and anxiety for the Plaintiff and poten-tially violate their due process rights;

4.14.10. The Defendants had an obligation to train its employees on proper procedures for handling appealed cases, including the importance of staying collection efforts and avoiding actions that could violate well established rights;

4.14.11. The Defendants knew or should have known that the lack of proper training for its employees would increase the risk of constitutional violations;

## 5. CLAIMS

### 5.1. COUNT 1: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

5.1.1. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein;

5.1.2. The First Amendment protects individual's rights to petition the government for redress of grievances, including the right to appeal court decisions without fear of retaliation;

5.1.3. Plaintiff exercised her constitutionally secured right by filing a trial de novo appeal of the municipal court decision in the Lee County Court;

5.1.4. On April 11th, 2018, before the hearing the City told Plaintiff to just go pay "the cheapest fine" and make this go away, Plaintiff stated she would take the case to the U.S. Supreme Court, the City immediately escalated from seeking fines to requesting jail time, despite no change in circumstances other than the exercise of appeal rights;

5.1.5. In 2022, without jurisdiction, Defendants issued arrest warrants and engaged American Municipal Services (AMS) to pursue collection of $1,436.75 while the case remained under appeal with no final judgment;

5.1.6. When Plaintiff received notices of arrest warrants and collection attempts in 2022, she made multiple urgent attempts to contact the City Attorney to address these constitutional violations while the case remained under appeal. The City Attorney's deliberate refusal to return any of Plaintiff's calls or take action to address the ongoing constitutional violations demonstrated a calculated pattern of retaliation against Plaintiff for exercising her constitutional rights;

5.1.7. The City's retaliatory intent became even clearer when Plaintiff formally brought these constitutional violations to the Court's attention. Rather than address the serious issues raised regarding improper warrants and collections during appeal, the City filed a motion to set the matter for trial as soon as possible, falsely claiming they 'knew of no reason why the cause should not be tried.' This deliberate disregard of ongoing constitutional violations, about which they had been repeatedly notified through both Plaintiff's direct communications and court filings, revealed the City's systematic campaign to punish Plaintiff for exercising her rights;

5.1.8. The City's pattern of increasingly hostile responses to Plaintiff's attempts to assert her constitutional rights - from ignoring communications about violations, to allowing continued enforcement despite notice, to pushing for immediate trial while disregarding proper procedure - created an atmosphere of constant fear and anxiety. This retali-

ation severely impacted Plaintiff's ability to pursue her paralegal career aspirations, as she lived under constant threat of arrest and imprisonment;

5.1.9. The City's retaliatory conduct prevented Plaintiff from freely traveling through Guntown to visit family in Mississippi, disrupting crucial family relationships and support systems. The constant fear of arrest while traveling anywhere created severe anxiety and sleepless nights, as Plaintiff never knew when she might be snatched and hauled away. This pervasive fear affected every aspect of her daily life, from basic travel to professional activities to family relationships.

5.1.10. As a direct result of the City's retaliatory conduct, Plaintiff experienced severe anxiety, inability to sleep, and disruption of personal relationships. The City's deliberate abuse of power to punish Plaintiff for exercising her constitutional rights fundamentally altered her ability to live freely and pursue her chosen profession, creating lasting psychological and emotional harm that continues to affect her daily life;

## 5.2. COUNT 2: VINDICTIVE PROSECUTION (42 U.S.C. § 1983)

5.2.1. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein;

5.2.2. The Due Process Clause prohibits prosecutors from punishing defendants for exercising constitutional or statutory rights;

5.2.3. In the Municipal Court, the City did not move for jail time;

5.2.4. On April 11th, 2018 the City offered Plaintiff to pay the cheapest charge to make the case go away and the Plaintiff stated her willingness to take the case to the U.S. Supreme Court;

5.2.5. An hour or so later, the City requested jail time at the April 11th, 2018 hearing without any changes to facts or circumstances;

5.2.6. The County Court determined Plaintiff was not properly notified of the charges, ordered the City to amend the complaints, and ordered the City to communicate with Plaintiff;

5.2.7. For five years, the City failed to respond to Plaintiff's motions and failed to communicate as ordered by the Court;

5.2.8. In 2022, without jurisdiction, the Defendants issued arrest warrants and pursued collections through AMS while the case remained under appeal with no final judgment;

5.2.9. The County Court confirmed in June 2023 that "this should not have happened as this matter is on appeal and has been for over 5 years" and that "the City should not be attempting to collect these fines as there is no final order";

5.2.10. The City's response to Plaintiff's Motion with proof of arrest warrants and ongoing collection efforts was to motion the Court to set the matter for trial as soon as the Court's calendar would permit;

5.2.11. The vindictive prosecution was implemented through Andrew Stuart, who served as the final policymaker for the City regarding litigation matters;

5.2.12. The City's actions demonstrated an institutional priority of revenue generation over constitutional rights, as evidenced by attempts to coerce payment before providing proper notice of charges and continuing collection efforts without jurisdiction despite being noticed, by the Plaintiff, of the arrest warrants and collection efforts while the case was under appeal with no final judgment;

5.2.13. As a direct result of the vindictive prosecution, Plaintiff experienced severe emotional distress, anxiety, fear of arrest, inability to freely travel through Guntown or anywhere, strain on family relationships, and impact on her paralegal career aspirations;

5.2.14. The City's actions caused Plaintiff to suffer significant anxiety and distress that drastically harmed her desire to become a paralegal and legal researcher, not knowing if at any minute she could be jailed for up to 18 months;

### 5.3. COUNT 3: DUE PROCESS VIOLATIONS (42 U.S.C. § 1983)

5.3.1. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein;

5.3.2. The Due Process Clause of the Fourteenth Amendment protects against both procedural and substantive due process violations;

5.3.3. On April 11th, 2018, the County Court determined that Plaintiff was not properly notified of the charges, ruled the complaints insufficient, and stated the court did not have jurisdiction;

5.3.4. The County Court ordered the City to amend the complaints, file those amendments with the Court, and send a copy to the Plaintiff with no set time limit for doing so;

5.3.5. The City failed to respond to any of Plaintiff's motions or communicate with her following the Court's order to amend the complaints and in 2023 moved for trial and completely ignored the courts order for amendments and deprived the Plaintiff of her well established due process rights;

5.3.6. In 2022, Defendants issued arrest warrants and pursued collections through AMS while lacking jurisdiction as the case had been on appeal since 2018;

5.3.7. The City admitted having no method for tracking whether a case was on appeal,

demonstrating deliberate indifference to constitutional rights at an institutional level and depriving the Plaintiff of her well established due process rights;

5.3.8. The County Court confirmed in June 2023 that "the Defendant was not properly notified of her charges and thus her due process rights are at issue" and that "more than 5 years passed with prosecution making no real attempt to advance the appeal";

5.3.9. The City's deliberate five-year failure to provide constitutionally required notice of charges created a state of profound uncertainty that severely impacted Plaintiff's ability to defend herself or understand potential penalties;

5.3.10. The City's systematic disregard of court orders to amend complaints and communicate with Plaintiff demonstrated deliberate indifference to fundamental due process rights, causing significant psychological harm through the perpetual uncertainty about pending charges;

5.3.11. The repeated threat of arrest and collection efforts without jurisdiction, while simultaneously failing to provide proper notice of charges, created severe anxiety that impacted Plaintiff's daily life and ability to maintain family relationships;

5.3.12. The prolonged uncertainty about charges and potential penalties significantly impacted Plaintiff's professional aspirations in the legal field, as she could not know if or when she might face imprisonment;

5.3.13. As a direct result of these due process violations, Plaintiff experienced severe emotional distress manifesting in anxiety about unknown charges, fear of arbitrary enforcement, and inability to effectively prepare a defense or plan for the future;

### 5.4. COUNT 4: FOURTH AMENDMENT CLAIM (42 U.S.C. § 1983)

5.4.1. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein;

5.4.2. The Fourth Amendment protects citizens against unreasonable seizures and requires warrants be supported by probable cause and issued by a court with jurisdiction;

5.4.3. In 2022, Guntown, through its agents and final policymaker Andrew Stuart, directed the issuance of arrest warrants against Plaintiff despite knowing the case was pending on appeal in Lee County Court and Guntown lacked jurisdiction to issue any warrants;

5.4.4. The arrest warrants were void ab initio as they were issued without jurisdiction while the case remained under active appeal in Lee County Court with no final judgment;

5.4.5. Guntown, through its agents, knowingly entered these void warrants into the

Mississippi Criminal Information Center, subjecting Plaintiff to imminent threat of seizure by any law enforcement officer accessing that system;

5.4.6. Guntown systematically employed these void warrants as a means of coercing payment, repeatedly threatening Plaintiff with arrest through its collection agent AMS despite lacking jurisdiction to issue or enforce any warrants;

5.4.7. The County Court confirmed in June 2023 that "this should not have happened as this matter is on appeal and has been for over 5 years" and ordered that "any warrants for Tracy should be stricken immediately";

5.4.8. Through its final policymaker Andrew Stuart, Guntown maintained and executed a policy of issuing arrest warrants without jurisdiction as a means of debt collection, demonstrating deliberate indifference to Fourth Amendment rights;

5.4.9. The void warrants issued by Guntown created an actual and imminent threat of arrest, forcing Plaintiff to restrict her travel through Guntown to visit family, restricting her movements within the state, and compelling her to avoid public spaces;

5.4.10. Plaintiff suffered concrete injury as the void warrants prevented her from freely traveling to see her Father, pick up her children, visit her Sisters, Mother, Mother in Law, Great Grandmother and other family members, all of whom required travel through Guntown;

5.4.11. The constitutional injury was particularly severe because Guntown's actions prevented Plaintiff from maintaining essential family relationships while deliberately employing void warrants to coerce payment in a case where it lacked jurisdiction;

5.4.12. As a direct result of Guntown's issuance and use of void arrest warrants, Plaintiff experienced constant fear of imminent arrest affecting her ability to travel, severe anxiety impacting daily activities, and forced isolation from family support during ongoing legal proceedings;

5.4.13. Defendants knew or should have known that issuing arrest warrants without jurisdiction would create an unreasonable seizure through the imminent threat of arrest on void warrants entered into law enforcement databases;

5.4.14. The severity of this constitutional violation is demonstrated by Guntown's continued use of void warrants for revenue collection even after being notified the case remained under appeal, showing deliberate indifference to fundamental Fourth Amendment rights;

### 5.5. COUNT 5: MALICIOUS PROSECUTION (42 U.S.C. § 1983)

5.5.1. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein;

5.5.2. In 2017, the City of Guntown initiated suit against Plaintiff;

5.5.3. On April 11th, 2018, the County Court determined that Plaintiff was not properly notified of the charges, ruled the complaints insufficient, and stated the court did not have jurisdiction;

5.5.4. The County Court ordered the City to amend the complaints and communicate with Plaintiff, but the City failed to comply for over five years;

5.5.5. That instead of complying with the courts order to amend, the City began enforcement actions and when the Plaintiff challenged these enforcement actions the City moved for trial;

5.5.6. In 2022, while lacking jurisdiction during appeal, the City pursued enforcement through arrest warrant notices and collection attempts via AMS;

5.5.7. The City admitted having no method for tracking whether a case was on appeal;

5.5.8. In June 2023, the County Court found that "more than 5 years passed with prosecution making no real attempt to advance the appeal" and that "the City should not be attempting to collect these fines as there is no final order";

5.5.9. The County Court gave the City 10 days to provide proof that they filed amended complaints and provided copies to the Plaintiff;

5.5.10. On July 6th, 2023, the County Court filed an order stating "the City of Guntown has not filed any response required by the Memorandum Opinion filed June 8th, 2023";

5.5.11. The malicious nature of the prosecution manifested in the City's deliberate pattern of escalating from seeking fines to demanding jail time immediately after Plaintiff refused to pay the cheapest fine, causing severe emotional trauma through a fear of imprisonment for merely exercising the established right to a trial de novo;

5.5.12. The City's revenue-driven prosecution created a pervasive fear of arrest that fundamentally altered Plaintiff's ability to travel freely or maintain normal family relationships;

5.5.13. The malicious continuation of prosecution without jurisdiction, while maintaining enforcement efforts, severely impacted Plaintiff's professional aspirations as a legal researcher and paralegal by creating constant uncertainty about potential arrest;

5.5.14. The five-year pattern of malicious prosecution caused Plaintiff to experience severe anxiety about traveling through Guntown or anywhere, effectively isolating her from family support systems;

### 5.6. COUNT 7: SIXTH AMENDMENT SPEEDY TRIAL VIOLATION (42 U.S.C. § 1983)

5.6.1. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein;

5.6.2. The Sixth Amendment guarantees criminal defendants the right to a speedy trial;

5.6.3. After the April 11th, 2018 hearing where the County Court ordered amendments to properly notify Plaintiff of charges, the City took no action to advance the case for over five years;

5.6.4. The County Court found in June 2023 that "more than 5 years passed with prosecution making no real attempt to advance the appeal";

5.6.5. This extraordinary delay was attributable solely to the City's deliberate inaction and failure to comply with Court orders;

5.6.6. The City's delay tactics included failing to amend complaints as ordered, ignoring Plaintiff's motions, refusing to communicate with Plaintiff, and pursuing unauthorized enforcement instead of proper prosecution;

5.6.7. The delay severely prejudiced Plaintiff by causing prolonged anxiety about potential imprisonment, restricting travel and daily activities due to fear of arrest, harming family relationships and career aspirations, and creating financial hardship through repeated collection attempts;

5.6.8. The City demonstrated deliberate indifference to Plaintiff's speedy trial rights through its systematic pattern of delay and harassment;

5.6.9. As final policymaker, Andrew Stuart established this unconstitutional policy of indefinite delay while maintaining enforcement pressure;

5.6.10. The prolonged constitutional violation directly caused Plaintiff severe emotional distress affecting all aspects of daily life.

### 5.7. COUNT 8: SIXTH AMENDMENT NOTICE OF CHARGES VIOLATION (42 U.S.C. § 1983)

5.7.1. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein;

5.7.2. The Sixth Amendment guarantees criminal defendants the right to be informed of the nature and cause of accusations;

5.7.3. On April 11th, 2018, the County Court determined that "Plaintiff was not properly notified of the charges and thus her due process rights are at issue";

5.7.4. The Court found the complaints insufficient and ruled it lacked jurisdiction due to inadequate notice;

5.7.5. Despite Court orders to amend the complaints and provide proper notice, the City failed to file any amendments for over five years, made no attempt to properly

16 of 19

inform Plaintiff of charges, and moved for trial in 2023 without curing the notice defect;

5.7.6. The City maintained enforcement efforts through arrest warrants and collections while knowingly failing to provide constitutionally required notice;

5.7.7. This violation of fundamental Sixth Amendment rights was implemented through Andrew Stuart as final policymaker;

5.7.8. The City demonstrated deliberate indifference to notice requirements through its systematic pattern of ignoring Court orders to amend, attempting coercive enforcement without proper notice, and moving for trial despite known notice defects;

5.7.9. The prolonged lack of proper notice directly harmed Plaintiff by preventing effective defense preparation, creating uncertainty about potential penalties, and causing severe anxiety about unknown accusations;

5.7.10. The City's deliberate violation of notice requirements caused Plaintiff significant emotional distress affecting daily life and relationships.

### 5.8. COUNT 9: MUNICIPAL LIABILITY (MONELL/PEMBAUR CLAIM)

5.8.1. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein;

5.8.2. The City of Guntown demonstrated a widespread pattern and practice of constitutional violations through official policy, custom, and deliberate indifference to fundamental rights;

5.8.3. The City established and maintained an official policy requiring all court matters to be directed through Andrew Stuart as evidenced by the City's statements that "they would need to ask Andrew first" for any court filings and directing Plaintiff to "talk to Andrew" for any court-related questions;

5.8.4. At all relevant times, Defendant Andrew Stuart was acting as the final policymaker for the City of Guntown regarding litigation matters, with authority to establish and implement municipal policies regarding prosecution and enforcement;

5.8.5. Stuart, as final policymaker, directly participated in constitutional violations by escalating to jail threats after appeal, refusing to amend complaints as ordered by the court, and maintaining enforcement efforts without jurisdiction;

5.8.6. The City's admitted policy of maintaining no method for tracking appealed cases demonstrates a deliberate choice to operate without basic constitutional safeguards;

5.8.7. This policy directly led to multiple constitutional violations including First Amendment retaliation, Fourth Amendment seizures, and Due Process violations as evidenced by continued enforcement actions during appeal;

5.8.8. The City's institutional policy of prioritizing revenue generation over constitutional rights was implemented through a pattern of coercive payment demands, threats of arrest, and collection efforts without jurisdiction;

5.8.9. The systematic nature of these violations is demonstrated by multiple instances of enforcement without jurisdiction, repeated threats through AMS, and consistent disregard for the Court's orders spanning five years;

5.8.10. The City's institutional policies and customs created systematic emotional harm through deliberate indifference to constitutional rights, manifesting in pervasive fear of arbitrary arrest and inability to rely on normal legal processes;

5.8.11. The City's established pattern of using arrest threats for revenue generation, while maintaining no system to track appeals, created severe emotional distress through the constant threat of unlawful detention;

5.8.12. The systematic nature of these constitutional violations fundamentally undermined Plaintiff's faith in the justice system and severely impacted her ability to pursue a legal career due to constant fear of arrest;

5.8.13. The City's deliberate choice to operate without basic constitutional safeguards directly caused severe emotional harm through the persistent threat of arbitrary enforcement and inability to obtain proper notice of charges;

5.8.14. The institutional failure to maintain proper systems for handling appeals created severe anxiety about potential arrest that impacted every aspect of Plaintiff's daily life, from family relationships to professional aspirations;

## 6. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

6.1. Award compensatory damages in the amount of $5,000,000 for five years of continuous constitutional violations; severe emotional distress and psychological harm; impact on family relationships; professional harm to legal career aspirations; loss of fundamental constitutional rights; and ongoing fear and anxiety affecting daily life;

6.2. Award punitive damages in the amount of $25,000,000 for systematic violation of constitutional rights; clear evidence of deliberate indifference; pattern of retaliatory conduct; high-level official involvement; and need for institutional deterrence;

6.3. Issue declaratory judgment that the City of Guntown's operation of a municipal court system without any mechanism to track appealed cases violates fundamental due process rights and creates an ongoing threat to constitutional liberties, particularly

given the City's demonstrated pattern of pursuing arrest and collection during pending appeals;

6.4. Issue declaratory judgment that the City of Guntown's operation of a municipal court system in cases where the City is a party, without any mechanism to track or respect appeal rights, violates fundamental due process by making appeal rights illusory and creating an unconstitutional risk of enforcement actions against parties exercising their appeal rights;

6.5. Issue permanent injunctive relief requiring the City to implement basic constitutional safeguards including a system for tracking appeals; mandatory constitutional rights training; oversight mechanisms to prevent unauthorized enforcement actions; and protective measures for defendants with pending appeals;

6.6. Issue permanent injunctive relief prohibiting the City from prosecuting any municipal court cases until implementing court-approved systems for tracking appeals and preventing unauthorized enforcement actions, as the current system's structural defects make constitutional operation impossible;

6.7. Order the City to preserve all records related to this matter and maintain compliance reporting to the Court regarding implementation of constitutional safeguards;

6.8. Order the City to issue corrective notices to all parties against whom warrants were issued or collection attempted while appeals were pending;

6.9. Grant such other relief as this Court deems just and proper.

## 7. JURY DEMAND

7.1. A trial by jury is hereby demanded.

Tracy Miller Arnold    2/13/25

Tracy Miller Arnold
Self Represented
423-529-4335
PO Box 864
Savannah, Tennessee 38372
Tracy.knightswife@gmail.com