# AT THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI

Tracy Miller Arnold

vs.

CITY OF GUNTOWN, Andrew Stuart in his Individual and Official Capacities

Cause # 1:25-CV-24-GHD-DAS

**RECEIVED**

MAY 30 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AFFIRMATIVE DEFENSES

1. Introduction............................................................................................................2
2. Defendants' Pleadings Create Substantial Prejudice And Delay....................................2
3. Several Defenses Are Legally Improper in § 1983 Actions............................................3
4. Joint Representation Creates Systemic Fair Notice Problems.........................................4
5. All 20 defenses Fail to Meet the *woodfield* requirements.............................................5
6. Legally Insufficient, Impertinent and Prejudicial "Affirmative Defenses".......................6
6.1. First Affirmative Defense (Failure to State a Claim)...............................................6
6.2. Third Affirmative Defense (Standing)...................................................................7
6.3. Fourth Affirmative Defense (Qualified Immunity)..................................................8
6.4. Fourth Aff. Def. (Sovereign Immunity, Absolute Immunity, Legislative Immunity)...........10
6.5. Seventh Affirmative Defense (Mississippi Tort Claims Act)....................................12
6.6. Eighth Affirmative Defense: Estoppel and Res Judicata.........................................13
6.7. Ninth Affirmative Defense (Good Faith/Honest Belief)..........................................15
6.8. Tenth Affirmative Defense (Comparative Fault)....................................................16
6.8.1. Section I: Inapplicability of Comparative Fault to § 1983 Constitutional Claims...........16
6.8.6. Section II: Municipality's Responsibility for AMS as Agent, Not Third-Party.................17
6.9. Eleventh Affirmative Defense (Failure to Exhaust Administrative Remedies)......................19
6.10. Thirteenth Affirmative Defense (Adequate State Remedy)....................................19
6.11. Nineteenth Affirmative Defense (Damage Caps)................................................21
7. Legally Insufficient "Affirmative Defenses".............................................................21
7.1. Twelfth Affirmative Defense (Failure to Mitigate).................................................21
7.2. Twentieth Affirmative Defense (Attorney's Fees).................................................22
8. Prejudicial and impertinent "affirmative defenses"...................................................23
8.1. Fourteenth Affirmative Defense (Reservation of FRCP 8(c) Defenses)......................23
8.2. Fifteenth Affirmative Defense (Unclean Hands)..................................................24
8.3. Sixteenth Affirmative Defense (After-Acquired Evidence).....................................26
8.4. Seventeenth Affirmative Defense (*Heck v. Humphrey*)........................................27
9. "Affirmative Defenses" that Only Fail *Woodfield*....................................................28
9.1. Second Affirmative Defense (Statute of Limitations)............................................28
9.2. Fifth Affirmative Defense (No Municipal Liability)...............................................29
9.3. Sixth Affirmative Defense (Punitive Damages Prohibition)....................................29
9.4. Eighteenth Affirmative Defense (Special Damages).............................................31
10. Conclusion..........................................................................................................31

# 1. INTRODUCTION

1.1. Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although motions to strike are generally disfavored[1] they are appropriate when defenses are legally insufficient or prejudicial to the moving party.

1.2. The Court should be particularly concerned about Defendants' unified defense strategy where joint counsel represents parties with inherently conflicting interests. Many of these affirmative defenses are legally impossible for one defendant but potentially available to the other, yet Defendants fail to specify which party is asserting which defense. This unified approach obscures critical distinctions between municipal and individual liability, creating precisely the "unfair surprise" that pleading standards are designed to prevent.

# 2. DEFENDANTS' PLEADINGS CREATE SUBSTANTIAL PREJUDICE AND DELAY

2.1. Defendants' conclusory defenses create an unfair discovery imbalance, requiring pro se Plaintiff to provide factual support for her claims while leaving her unable to anticipate or prepare for defenses that lack any factual foundation. This asymmetry prejudices Plaintiff's ability to effectively litigate her case.

2.2. As a pro se litigant, Plaintiff faces particular hardship responding to 20 inadequately pleaded defenses while opposing institutional defendants with taxpayer-funded counsel. Defendants exercising all 20 "affirmative defenses" could add a year or more of motion practice to the case before reaching the merits.

---

[1] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)

2.3. Several defenses serve merely as pretexts for intrusive discovery into irrelevant matters: *Heck*[2] enables criminal history exploration despite no conviction; 'unclean hands' invites invasive personal inquiries; and 'after-acquired evidence' wrongly suggests employment-related document requests.

2.4. Defendants' joint representation creates irreconcilable conflicts in their defense strategy. The City must portray Stuart as acting outside policy to avoid *Monell*[3] liability, while Stuart must demonstrate he acted reasonably within official capacity to claim qualified immunity. These contradictory positions, asserted without specifying which defendant relies on which theory, prejudices Plaintiff's ability to prepare proper responses and discovery.

### 3. SEVERAL DEFENSES ARE LEGALLY IMPROPER IN § 1983 ACTIONS

3.1. Defendants assert "good faith immunity" and "comparative fault" explicitly barred under *Owen*[4] which prohibits municipalities from claiming such protections in § 1983 actions.

3.2. Defenses like "unclean hands," "after-acquired evidence," and "*Heck v. Humphrey*" have no application to the constitutional claims at issue.

3.3. Defendants improperly invoke the "Mississippi Tort Claims Act" and "adequate state remedy" barriers—standards inapplicable to federal constitutional claims under § 1983.

3.4. This mixing of inapplicable tort, employment, and criminal law defenses with legitimate § 1983 defenses creates unnecessary complexity, risks misleading jury instruc-

[2]  *Heck v. Humphrey*, 512 U.S. 477 (1994)
[3]  *Monell v. Department of Social Services*, 436 U.S. 658 (1978)
[4]  *Owen v. City of Independence*, 445 U.S. 622 (1980)

1    tions, and potentially confuses constitutional standards with incompatible tort doc-

2    trines.

### 4. JOINT REPRESENTATION CREATES SYSTEMIC FAIR NOTICE PROBLEMS

3    4.1. Defendants' joint representation has produced an answer where it is impossible to

4        determine which defendant is asserting which defense, despite the fact that many

5        defenses can only legally apply to one defendant but not both. This structural ambi-

6        guity creates systemic fair notice problems that permeate all twenty affirmative de-

7        fenses:

8    4.2. For immunity defenses, the City cannot claim qualified immunity under *Owen*[5],

9        while individual defendant Stuart potentially can. Yet the defense is asserted collec-

10       tively without distinction.

11    4.3. For *Monell*-related[6] defenses, the City must argue Stuart acted outside policy, while

12       Stuart must argue he acted according to policy for immunity purposes. These con-

13       tradictory positions cannot be simultaneously true, yet both are asserted without

14       specifying which defendant relies on which theory.

15    4.4. For damage-related defenses, municipalities cannot face punitive damages while in-

16       dividual defendants can, yet the punitive damages defense is asserted collectively.

17    4.5. The contradictions inherent in the defendants' joint representation create significant

18       obstacles for the Plaintiff in formulating a proper response. This issue extends be-

19       yond mere lack of detail to a collective approach that obscures which defendant re-

20       lies on which legal theory, resulting in the kind of unfair surprise that undermines

---

5   Id.
6   *Monell v. Department of Social Services*, 436 U.S. 658 (1978)

fair notice principles. In *Goodyear*[7], the withholding of critical evidence similarly impeded the court's ability to resolve the case on its merits, highlighting the necessity of transparency in litigation to serve the judicial process's truth-seeking purpose. Such a procedural approach contravenes the principle that litigation should facilitate the clear presentation of claims and defenses. This Court should promote pleading practices that support the just, speedy, and efficient determination of this action[8] to ensure a fair resolution grounded in truth.

## 5. ALL 20 DEFENSES FAIL TO MEET THE *WOODFIELD* REQUIREMENTS

5.1. Under *Woodfield*[9], affirmative defenses must provide "fair notice" so that plaintiff "was not a victim of unfair surprise." Here, Defendants have asserted twenty bare-bones affirmative defenses consisting merely of legal conclusions without supporting factual allegations.

5.2. All 20 defenses are fatally flawed for the following reasons:

5.3. Each defense is pleaded as a bare legal conclusion without supporting factual allegations—merely naming legal theories without explaining their application.

5.4. The strategic incompatibility goes beyond mere pleading deficiencies to raise fundamental questions about whether these defenses can be asserted in good faith under Rule 11. Joint counsel cannot simultaneously believe Stuart acted according to policy (necessary for his immunity defense) and against policy (necessary for the City's defense against *Monell* liability). This irreconcilable conflict explains why the defenses lack factual specificity—because any factual detail would necessarily hurt one

7   *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)
8   Fed. R. Civ. P. 1
9   *Woodfield v. Bowman*, 193 F.3d 354 (5th Cir. 1999)

1    client while helping the other.

2   5.5. This conflict-driven ambiguity makes fair notice impossible regardless of pleading

3    detail. Even a more specific answer would remain fundamentally defective if it con-

4    tinued asserting incompatible defenses without specifying which defendant is assert-

5    ing which defense. Only clear delineation of which defendant asserts each defense

6    can provide the fair notice required by *Woodfield*.

7   5.6. Defendants engage in impermissible "shotgun pleading" by asserting 20 defenses in

8    conclusory fashion without factual development.

9   5.7. This kitchen-sink approach directly contravenes *Woodfield*'s requirement that de-

10    fenses contain sufficient factual matter to provide fair notice.

11   5.8. The defenses provide no factual basis showing how they relate to Plaintiff's specific

12    constitutional claims, leaving Plaintiff unable to meaningfully prepare discovery.

13   5.9. Even under this District's more permissive approach, *Woodfield* still requires mini-

14    mal factual development beyond mere recitation of legal doctrines, which Defen-

15    dants have failed to provide for any of their 20 asserted "affirmative defenses."

### 6. LEGALLY INSUFFICIENT, IMPERTINENT AND PREJUDICIAL "AFFIRMATIVE DEFENSES"

#### 6.1. FIRST AFFIRMATIVE DEFENSE (FAILURE TO STATE A CLAIM)

16   6.1.1. Rule 12(h)(2) provides that "[f]ailure to state a claim upon which relief can be

17    granted, a defense that may be raised... at the trial on the merits." However, this

18    preservation rule does not transform a Rule 12(b)(6) challenge into an affirmative

19    defense subject to waiver under Rule 8(c)(1).

6.1.2. The proper procedural vehicles for failure-to-state-a-claim challenges remain: (1) Rule 12(b)(6) motion (pre-answer); (2) Rule 12(c) motion for judgment on the pleadings (post-pleadings); or (3) at trial pursuant to Rule 12(h)(2).

6.1.3. Accordingly, Defendants' attempt to characterize their challenge as an affirmative defense is procedurally improper and should be stricken, without prejudice to their right to raise the issue through proper Rule 12 channels.

## 6.2. THIRD AFFIRMATIVE DEFENSE (STANDING)

6.2.1. Standing is a constitutional requirement that goes to the court's subject matter jurisdiction under Article III, not an affirmative defense. See *Warth*[10]. Unlike affirmative defenses, standing cannot be waived and may be raised at any time, including sua sponte by the court.

6.2.2. A conclusory assertion that plaintiff lacks standing fails to meet Rule 8's notice pleading requirements. Defendants must specifically allege facts showing what elements of standing (injury-in-fact, causation, or redress-ability) are lacking.

6.2.3. The Complaint alleges direct injuries to Plaintiff with supporting exhibits. These allegations establish concrete, particularized injury directly traceable to Defendants' conduct and redress-able by a favorable decision. See *Lujan* below.

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'". Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not. .. th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative,"

---

10 *Warth v. Seldin*, 422 U.S. 490, 518 (1975)

that the injury will be "redressed by a favorable decision." (internal citations omitted)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)

6.2.4. Moreover, the County Court specifically found that "the delay in this matter violated the Defendant's Constitutional right to Due Process,"[11] establishing as a threshold matter that Plaintiff suffered an injury in fact caused by Defendants' conduct. Given these facts, there is no plausible basis on which Defendants could assert a standing defense.

6.2.5. If Defendants possess actual facts supporting threshold defenses such as standing, they should be required to present these facts immediately rather than preserving them as vague affirmative defenses. Conservation of judicial resources demands that fundamental jurisdictional challenges be brought promptly through appropriate motions rather than concealed within boilerplate defenses to be developed during months of discovery.

### 6.3. FOURTH AFFIRMATIVE DEFENSE (QUALIFIED IMMUNITY)

6.3.1. Defendants' Fourth Affirmative Defense asserting qualified immunity along with "sovereign immunity, legislative immunity, and/or absolute immunity" should be stricken as legally insufficient and improperly pleaded. The qualified immunity defense fails to meet the pleading requirements established in *Harlow*[12] and subsequent precedent.

6.3.2. Qualified immunity is unavailable to municipal defendants. *Owen* categorically held that municipalities "may not assert the good faith of [their] officers as a de-

---

11  See Doc. No. [1-3] page 8, PageID# 35. D. paragraph 4.
12  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)

fense"[13] to § 1983 liability. The Supreme Court emphasized that municipalities face strict liability for constitutional violations regardless of officials' subjective intent or objective reasonableness. The City of Guntown cannot cure this fundamental legal deficiency through amended pleading.

6.3.3. Even if properly pleaded by individual defendant Stuart, qualified immunity would fail under the *Harlow* standard, which protects officials only when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."[14]

6.3.4. Defendants' unified immunity defense reveals a fundamental conflict of interest that renders the pleading inherently deficient. The City of Guntown and Stuart have diametrically opposed strategic interests regarding immunity.

6.3.5. Joint representation of conflicting interests explains the defense's fatal vagueness. Defendants cannot plead specific facts supporting immunity because any factual allegations would benefit one defendant while harming the other. This conflict renders meaningful pleading impossible and creates the unfair surprise Rule 8(c) prohibits.

6.3.6. The unified defense, in which multiple defendants assert a collective claim of qualified immunity, obscures the individual legal positions each must articulate to enable a clear evaluation of their defenses. This collective approach hinders the court's ability to resolve the case on its merits, creating confusion about which legal theories apply to each defendant. In *Goodyear*[15], the concealment of evidence similarly

---

13 *Owen v. City of Independence*, 445 U.S. 622, 638 (1980)
14 *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)
15 Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017)

1    frustrated the judicial process, underscoring the importance of clarity in litigation to

2    uncover the truth. Just as *Warth*[16], requires plaintiffs to clearly establish standing to

3    invoke the court's jurisdiction, defendants should distinctly present their defenses to

4    facilitate a fair and accurate resolution.

5    6.3.7. Defendants' qualified immunity defense must be stricken because: (1) it fails to

6    meet basic federal pleading requirements; (2) municipalities cannot assert qualified

7    immunity under binding Supreme Court precedent; and (3) the joint defense creates

8    irreconcilable conflicts between co-defendants that prevent proper factual pleading

9    and create unfair surprise.

### 6.4. FOURTH AFF. DEF. (SOVEREIGN IMMUNITY, ABSOLUTE IMMUNITY, LEGISLATIVE IMMUNITY)

10   6.4.1. Defendants' fourth affirmative defense also asserts that "Plaintiff's claims are

11   barred, in whole or in part, by the doctrines of sovereign immunity, legislative im-

12   munity, and/or absolute immunity." This defense is legally insufficient because:

13   6.4.2. **Sovereign Immunity** does not shield municipalities from § 1983 liability. In *Mon-*

14   *ell*[17], the Supreme Court explicitly held that municipalities are "persons" subject to

15   suit under § 1983 and do not enjoy sovereign immunity from such claims. The

16   Court reaffirmed this principle in *Owen,* stating that "there is no tradition of im-

17   munity for municipal corporations, and neither history nor policy supports a con-

18   struction of § 1983 that would justify it."[18] The municipal defendant in this case

19   cannot assert sovereign immunity as a defense to Plaintiff's § 1983 claims.

---

16  Warth v. Seldin, 422 U.S. 490, 518 (1975)
17  *Monell v. Department of Social Services,* 436 U.S. 658, 690 (1978)
18  *Owen v. City of Independence,* 445 U.S. 622, 638 (1980)

1    **6.4.3. Absolute Prosecutorial Immunity** is narrowly constrained by the Supreme Court to

2    protect only actions taken "in initiating a prosecution and in presenting the State's

3    case,"[19] not every action a prosecutor performs. This limited immunity shields only

4    functions that are "intimately associated with the judicial phase of the criminal

5    process,"[20] while providing no protection for administrative or investigative activi-

6    ties. Critical to this case, when prosecutors are sued in their official capacity as rep-

7    resentatives of a municipality, they cannot invoke personal immunity defenses to

8    protect the government entity from liability. As the Supreme Court explicitly stated

9    in *Kentucky*: "[I]n an official-capacity action, [personal immunity] defenses are un-

10    available."[21] The fact that the underlying prosecution in this case was dismissed

11    specifically due to constitutional violations provides conclusive evidence that the

12    prosecutor's conduct fell outside the legitimate scope of prosecutorial functions pro-

13    tected by immunity. When a prosecutor violates constitutional rights, they step be-

14    yond the boundaries of protected advocacy into unprotected misconduct.

The Court therefore held that prosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process. ... Decisions in later cases are consistent with the functional approach to immunity employed in *Imbler*. These decisions have also emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite sparing in our recognition of absolute immunity and have refused to extend it any further than its justification would warrant. (internal citations omitted)

Burns v. Reed, No., 500 U.S. 478, 486-87 (1991)

---

19 *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)
20 *Burns v. Reed*, 500 U.S. 478, 486 (1991)
21 *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)

1    6.4.4. **Legislative Immunity** is wholly inapplicable to this case as the complaint does not

2        challenge legislative acts done by the defendants. Legislative immunity applies only

3        to actions taken "in the sphere of legitimate legislative activity."[22] The Supreme

4        Court has emphasized that this immunity is limited and applies only to legislative

5        activities.[23] Defendants have not identified any legislative acts at issue in this case,

6        nor could they.

### 6.5. Seventh Affirmative Defense (Mississippi Tort Claims Act)

7    6.5.1. The Supreme Court held that "a state law that immunizes government conduct

8        otherwise subject to suit under § 1983 is pre-empted, even where the federal civil

9        rights litigation is brought in state court."[24] Accordingly, state tort claims act immu-

10       nities cannot bar § 1983 claims in either state or federal court.

11    6.5.2. The Court held that "States may no more condition the federal right to recover for

12       violations of civil rights than bar that right altogether,"[25] particularly where those

13       conditions arise from immunity waivers that are "entirely irrelevant insofar as the

14       assertion of the federal right is concerned."[26] *Felder* establishes that the Supremacy

15       Clause preempts state tort claims acts when they conflict with § 1983's remedial

16       objectives.

17    6.5.3. Mississippi's Tort Claims Act provides no defense to federal constitutional viola-

18       tions under § 1983 in any court of competent jurisdiction.

---

22   *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)
23   *Forrester v. White*, 484 U.S. 219, 224 (1988)
24   *Felder v. Casey*, 487 U.S. 131, 139 (1988)
25   Id.
26   Id. at 144

### 6.6. EIGHTH AFFIRMATIVE DEFENSE: ESTOPPEL AND RES JUDICATA

6.6.1. Defendants' eighth affirmative defense asserts that "Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and res judicata." This defense is legally insufficient for several reasons:

6.6.2. First, the County Court's dismissal of the criminal case against Plaintiff due to due process violations supports her § 1983 claims rather than bars them. The court specifically found constitutional violations and ordered arrest warrants stricken— findings that establish rather than preclude Plaintiff's civil rights claims.

6.6.3. Second, collateral estoppel actually precludes Defendants from relitigating the County Court's constitutional violation findings. Under *Allen v. McCurry*, 449 U.S. 90, 94 (1980), state court findings can have preclusive effect in § 1983 actions. The County Court's unappealed ruling that Defendants violated due process is binding and supports Plaintiff's claims. This case is distinguishable from *Taylor v. Charter Medical Corp.* 162 F.3d 827 (5th Cir. 1998), where courts cannot take judicial notice of another court's factual findings involving different parties—here, the same parties litigated these constitutional issues in the criminal proceeding, making collateral estoppel properly applicable. Stuart's role as prosecutor establishes clear privity with the City as prosecuting entity, satisfying the identity of parties requirement for collateral estoppel.

6.6.4. Unlike in Allen v. McCurry where the plaintiff had lost on constitutional issues in state court, here Defendants were the prosecuting parties who lost when the County Court found constitutional violations. Having had full opportunity to litigate these

1    issues as prosecutors and choosing not to appeal, Defendants are now bound by

2    that adverse determination.

3    6.6.5. Fourth, Defendants fail to identify what claims or issues were allegedly decided,

4    creating unfair surprise under *Woodfield.*

5    6.6.6. Allowing this vague and legally incorrect defense to proceed would substantially

6    prejudice Plaintiff in multiple ways. First, it would force Plaintiff to expend signifi-

7    cant resources conducting discovery and preparing arguments to counter a defense

8    that has no legal or factual basis, given that the County Court's findings actually

9    support rather than bar Plaintiff's claims. Second, it would create confusion in the

10   litigation by suggesting that previously resolved constitutional issues remain open

11   for reconsideration, potentially leading to inconsistent judicial determinations on

12   the same issues between the same parties. Third, it would undermine judicial econ-

13   omy by requiring relitigation of constitutional violations that were already deter-

14   mined by the County Court. Fourth, it would unfairly delay resolution of Plaintiff's

15   claims by introducing a meritless defense that contradicts established principles of

16   collateral estoppel. Finally, it would potentially erode the finality of the County

17   Court's unappealed determination of constitutional violations, which Plaintiff has

18   relied upon in bringing this action. This combination of increased costs, litigation

19   confusion, efficiency losses, potential delay, and undermining of final judicial deter-

20   minations constitutes substantial prejudice to Plaintiff that warrants striking this de-

21   fense.

22   6.6.7. This defense should be stricken as legally insufficient and factually baseless.

### 6.7. Ninth Affirmative Defense (Good Faith/Honest Belief)

6.7.1. *Owen*[27] categorically rejected good faith immunity for municipalities in § 1983 actions. The Supreme Court held unambiguously that "a municipality has no immunity from liability under § 1983 flowing from its constitutional violations, and may not assert the good faith of its officers as a defense to such liability."[28] Municipal defendants cannot assert subjective good faith as a defense to constitutional violations, as the Court made clear that such immunity is "wholly inapplicable, when the liability of the municipal entity is at issue."[29]

6.7.2. The Court rejected the lower court's extension of qualified immunity to municipalities, emphasizing that § 1983 "creates a species of tort liability that, on its face, admits of no immunities,"[30] and that its "language is absolute and unqualified."[31] Unlike individual officers who may claim qualified immunity based on good faith and reasonable reliance on then-existing law, municipalities are strictly liable for constitutional violations regardless of their officials' subjective intent or reasonable belief in the lawfulness of their actions.[32] This bright-line rule forecloses any municipal defense premised on good faith, whether characterized as subjective good faith, reasonable reliance on existing precedent, or innocent mistake of law.

6.7.3. Accordingly, Defendants' Ninth Affirmative Defense (Good Faith/Honest Belief) is legally insufficient as a matter of law and should be stricken as it improperly at-

---

27 *Owen v. City of Independence*, 445 U.S. 622 (1980)
28 Id. at 635
29 *Owen*, id. at 652-53
30 *Owen*, id. at 635
31 *Owen*, id. at 635
32 *Owen*, id. at 657-58.

tempts to assert a defense that the Supreme Court has definitively foreclosed for municipal defendants in § 1983 actions.

### 6.8. TENTH AFFIRMATIVE DEFENSE (COMPARATIVE FAULT)

### 6.8.1. SECTION I: INAPPLICABILITY OF COMPARATIVE FAULT TO § 1983 CONSTITUTIONAL CLAIMS

6.8.2. Defendant's assertion of comparative fault against the Plaintiff as an affirmative defense is legally insufficient as a matter of law and should be stricken from their answer. This defense fails primarily because the Supreme Court has explicitly held that "§ 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."[33] This precedent establishes that comparative fault, which is fundamentally a tort law principle, cannot be applied to constitutional violations brought under § 1983.

6.8.3. Furthermore, Defendant's actions were ultra vires and without jurisdiction, creating void acts for which Plaintiff cannot bear fault. The record establishes that Defendant municipality issued arrest warrants without proper jurisdiction. When a municipal entity acts beyond its legal authority, those actions are considered void, and a plaintiff cannot logically or legally bear fault for municipal actions that lacked legal authority from their inception.

6.8.4. The defense also fails because Defendant's systematic failure to comply with court orders for a period of five years created an impossibility of performance for Plaintiff. The municipality failed to provide any mechanism for tracking appeals or resolving the underlying charges and created a procedural void that prevented any

---

33 *Baker v. McCollan*, 443 U.S. 137, 146

1    meaningful resolution of the matter. When compliance is rendered impossible by

2    the defendant's own actions and institutional failures, comparative fault principles

3    cannot reasonably apply.

4  6.8.5. Additionally, the comparative fault defense impermissibly seeks to shift liability

5    for Defendant's own violations of ministerial duties and constitutional obligations.

6    The Constitution places absolute obligations on municipal entities that cannot be

7    diminished through allegations of plaintiff fault. Allowing comparative fault in this

8    context would effectively permit municipal entities to escape their constitutional re-

9    sponsibilities by shifting blame to the very people whose rights they are obligated to

10   protect.

### 6.8.6. SECTION II: MUNICIPALITY'S RESPONSIBILITY FOR AMS AS AGENT, NOT THIRD-PARTY

11  6.8.7. Plaintiff respectfully moves this Court to strike Defendants' affirmative defense al-

12    leging that "the actions of a third party for whom defendants are not responsible

13    were the proximate and superseding cause of any damages Plaintiff sustained." This

14    defense is both factually vague and legally insufficient.

15  6.8.8. Assuming Defendants are referring to AMS as the "third party," this defense is

16    contradicted by Defendants' own admissions in their Answer. Defendants re-

17    sponded to allegations regarding the AMS notices by stating that "the notices speak

18    for themselves," thus not denying the content of those notices. These notices, which

19    are attached to the Complaint as exhibits[34] and are therefore properly before the

20    Court, explicitly state that AMS was "court authorized" as "a private municipal ac-

---

34  See Doc. No. [1-1] page 2-5, PageID# 21-24

1  count resolution company to assist" the municipality in resolving the matter. By not

2  denying these statements and asserting that the notices "speak for themselves," De-

3  fendants have effectively admitted that AMS was acting with municipal authority

4  and authorization, not as an independent third party.

5  6.8.9. Municipal authorization of AMS renders the defense legally insufficient. A defense

6  that is contradicted by a defendant's own admissions cannot serve as a valid basis

7  for avoiding liability.

8  6.8.10. The defense's claim that delegation to a private entity shields the municipality

9  from § 1983 liability is untenable in the Fifth Circuit. Under *West*[35], private entities

10  performing delegated municipal functions are state actors, and their actions can

11  trigger municipal liability. Per *Monell*[36], the municipality remains responsible if its

12  policy, custom, or failure to oversee the delegatee causes the violation. Additionally,

13  *Pembaur*[37] confirms that a policymaker's decision to delegate authority can itself

14  constitute a policy, binding the municipality if it results in a constitutional harm.

15  Thus, delegation does not sever the municipality's obligation to ensure that consti-

16  tutional rights are upheld, and the defense's argument fails as a matter of law.

### 6.9. ELEVENTH AFFIRMATIVE DEFENSE (FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES)

17  6.9.1. *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982), explicitly held that § 1983

18  plaintiffs need not exhaust state administrative remedies before filing suit. The

19  Supreme Court categorically stated: "Exhaustion of state administrative remedies is

---

35  West v. Atkins, 487 U.S. 42 (1988)
36  *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)
37  *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)

not a prerequisite to an action under § 1983."[38] The Court emphasized it had "on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies."[39]

6.9.2. Congress deliberately omitted an exhaustion requirement from § 1983. The Court found that the 1871 Congress intended to "throw open the doors of the United States courts"[40] to civil rights plaintiffs and provide immediate federal court access without administrative delays. When Congress later enacted 42 U.S.C. § 1997e creating a narrow exhaustion requirement only for prisoners, it confirmed the general no-exhaustion rule for all other § 1983 claims. The Court held that "a judicially imposed exhaustion requirement would be inconsistent with Congress' decision" and "would usurp policy judgments that Congress has reserved for itself."[41]

### 6.10. THIRTEENTH AFFIRMATIVE DEFENSE (ADEQUATE STATE REMEDY)

6.10.1. Defendants' thirteenth affirmative defense asserting that adequate state remedies preclude federal civil rights claims under § 1983 is legally improper and must be rejected. The Supreme Court definitively settled this issue over sixty years ago in *Monroe v. Pape*.

6.10.2. Federal civil rights claims may be pursued regardless of available state remedies.[42] The existence of state remedies is irrelevant to § 1983 liability and damages.

6.10.3. The Supreme Court explicitly held: "The federal remedy is supplementary to the state remedy, and the state remedy need not be sought and refused before the fed-

---

38 *Patsy v. Board of Regents*, 457 U.S. 496, 500 (1982)
39 Id.
40 Id. at 504
41 Id. at 502.
42 See *Monroe v. Pape*, 365 U.S. 167 (1961)

1    eral one is invoked."[43] The Court further emphasized that "the fact that Illinois, by

2    its constitution and laws, outlaws unreasonable searches and seizures is no barrier

3    to the present suit in the federal court."[44]

4  6.10.4. The Court's reasoning was unambiguous regarding why Congress created this

5    supplementary federal remedy:

> "It is abundantly clear that one reason the legislation was passed was to afford a
> federal right in federal courts because, by reason of prejudice, passion, neglect, intol-
> erance or otherwise, state laws might not be enforced and the claims of citizens to the
> enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amend-
> ment might be denied by the state agencies."
> *Monroe v. Pape*, 365 U.S. 167, 180

6  6.10.5. This holding makes clear that any affirmative defense premised on the adequacy

7    of state remedies is fundamentally incompatible with § 1983. Congress specifically

8    intended federal civil rights claims to be available immediately in federal court,

9    without regard to whether state law provides remedies for the same conduct.

10  6.10.6. Defendants cannot circumvent federal civil rights liability by pointing to state

11    law alternatives. The *Monroe* doctrine ensures that federal constitutional violations

12    receive federal judicial protection, regardless of parallel state remedies.

### 6.11. NINETEENTH AFFIRMATIVE DEFENSE (DAMAGE CAPS)

13  6.11.1. This defense is factually incorrect. § 1983 claims for constitutional violations are

14    not subject to federal damage caps. The Supreme Court in *Smith*, explicitly held

15    that punitive damages are available in § 1983 actions without statutory limitation.

16    Punitive damages are awarded in the jury's discretion "to punish [the defendant] for

---

43  *Monroe v. Pape*, 365 U.S. 167, 183 (1961)
44  Id.

his outrageous conduct and to deter him and others like him from similar conduct in the future."[45] Compensatory damages for constitutional violations, including emotional distress and dignitary harms, are similarly uncapped.[46] Mississippi state law damage caps do not apply to federal constitutional claims brought under § 1983.

6.11.2. This defense improperly shifts the burden to Plaintiff to disprove the existence of unspecified damage caps, rather than requiring Defendants to prove their existence with specific legal authority. The defense serves no purpose other than to confuse the jury about applicable law and waste judicial resources investigating nonexistent limitations on constitutional damages.

## 7. LEGALLY INSUFFICIENT "AFFIRMATIVE DEFENSES"

### 7.1. TWELFTH AFFIRMATIVE DEFENSE (FAILURE TO MITIGATE)

7.1.1. Defendants' Twelfth Affirmative Defense asserting "failure to mitigate" is legally insufficient and must be stricken. The failure to mitigate doctrine is fundamentally incompatible with § 1983 constitutional claims because constitutional violations create intangible harms to dignity, liberty, and fundamental rights that cannot be "mitigated" through plaintiff action.[47] Moreover, courts consistently hold that a plaintiff has no duty to mitigate constitutional violations where mitigation would require surrendering the very constitutional rights at issue.[48]

---

45 *Smith v. Wade*, 461 U.S. 30, 56 (1983)
46 See *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986)
47 Id. at 310 n.14
48 See *Carey v. Piphus*, 435 U.S. 247, 266 (1978)

7.1.2. In this case, Plaintiff exercised her clearly established right to trial de novo after municipal court. Accepting Defendants' pre-hearing offer to "pay the cheapest fine" would have required abandoning this constitutional right. The complained-of harms - emotional distress, anxiety, and inability to travel - resulted entirely from Defendants' deliberate constitutional violations over a period five years: issuing void arrest warrants during pending appeal, refusing to comply with court orders to amend complaints, maintaining enforcement efforts without jurisdiction, and operating without systems to track appeals. Plaintiff could not "mitigate" these deliberate Municipal actions.

7.1.3. This bare legal conclusion fails to meet basic pleading standards for affirmative defenses.[49] Maintaining this legally frivolous defense will mislead the jury, require unnecessary discovery on irrelevant theories, waste judicial resources, and prejudice Plaintiff by suggesting constitutional violations can be "mitigated away."

### 7.2. TWENTIETH AFFIRMATIVE DEFENSE (ATTORNEY'S FEES)

7.2.1. Defendants' twentieth affirmative defense merely states: 'Defendants are entitled to an award of attorneys' fees.' This is procedurally improper for multiple reasons.

7.2.2. First, as established in *Blanchard v. Bergeron*, 489 U.S. 87 (1989), attorney's fee awards under § 1988 are remedial in nature and determined through the lodestar method after liability has been established. This post-judgment calculation process cannot logically function as an affirmative defense.

---

[49] See *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862 (5th Cir. 1962)

7.2.3. Second, defendants in § 1983 cases may recover attorney's fees only if the action was 'frivolous, unreasonable, or without foundation.'[50] This determination necessarily occurs after the merits have been resolved and cannot be adequately pleaded as an affirmative defense.

7.2.4. An affirmative defense must raise matters extraneous to plaintiff's prima facie case that 'avoid, defeat, or minimize' the claims. A request for attorney's fees does neither—it is a separate remedial matter that, as *Blanchard* establishes, serves to enable the enforcement of civil rights laws rather than defeat claims on their merits.

7.2.5. For these reasons, the Court should strike Defendants' twentieth affirmative defense as procedurally improper and not properly pleaded as an affirmative defense.

## 8. PREJUDICIAL AND IMPERTINENT "AFFIRMATIVE DEFENSES"

### 8.1. FOURTEENTH AFFIRMATIVE DEFENSE (RESERVATION OF FRCP 8(C) DEFENSES)

8.1.1. Defendants' fourteenth affirmative defense states: "Defendants reserve all available defenses under Federal Rule of Civil Procedure 8(c)." This is not a proper affirmative defense but an attempt to circumvent the pleading requirements of Rule 8(c).

8.1.2. The proper mechanism for preserving defenses is found in Rule 12(h), which specifically outlines which defenses can be raised later and which are waived if not timely asserted. Defendants cannot create their own preservation mechanism outside this framework.

---

[50] *Hughes v. Rowe*, 449 U.S. 5 (1980)

8.1.3. The Federal Rules were designed to streamline litigation and promote the "just, speedy, and inexpensive determination of every action."[51] Defendants' attempted reservation directly undermines these goals in multiple ways:

8.1.4. When defendants preserve "all available defenses," plaintiffs must conduct discovery on every conceivable theory of defense, dramatically expanding the scope and cost of litigation. This directly conflicts with Rule 26's mandate for proportional discovery and Rule 1's goal of inexpensive resolution.

8.1.5. The Federal Rules aim to encourage early identification of issues to facilitate settlement or narrow litigation. Defendants' approach does the opposite - it maintains maximum uncertainty to preserve tactical advantages, contrary to the Rules' transparency principles.

8.1.6. Rule 26(f) requires parties to meet and confer about case planning. This undermines the collaborative approach modern litigation requires. Therefore, this affirmative defense should be stricken.

## 8.2. FIFTEENTH AFFIRMATIVE DEFENSE (UNCLEAN HANDS)

8.2.1. Defendants' unclean hands defense: (1) fails to plead any facts alleging misconduct by Plaintiff beyond exercising constitutional appeal rights and reporting violations; (2) the defense has no application to § 1983 civil rights actions where the purpose is to vindicate constitutional rights, and allowing municipalities to raise unclean hands against people exercising proper appeal procedures would undermine § 1983's remedial purpose; (3) Defendants cannot establish the required nexus between any al-

---

51 Fed. R. Civ. P. 1

leged conduct and their own five-year pattern of constitutional violations, including admitting no appeal tracking system, ignoring court orders, and issuing warrants without jurisdiction; and (4) allowing this defense would severely prejudice Plaintiff through discovery abuse into privileged matters, jury confusion that might excuse Defendants' systematic constitutional violations, chilling of constitutional rights, and strategic harassment designed to punish Plaintiff for challenging unconstitutional practices.

8.2.2. The defense is particularly inappropriate where Plaintiff seeks prospective equitable relief requiring institutional reform to implement case-tracking procedures for future appellants, making any alleged "misconduct" consisting of exercising appeal rights wholly irrelevant to the requested relief that would benefit the public interest by preventing future constitutional violations against the people.

8.2.3. The unclean hands defense is particularly inapplicable to § 1983 actions, as equitable defenses cannot bar constitutional or statutory rights without clear legislative intent.[52] Moreover, equitable doctrines like unclean hands must align with § 1983's remedial purpose of deterring and redressing government misconduct. Defendants' failure to plead specific misconduct[53] with a direct nexus[54] to their violations renders the defense insufficient.

---

[52] See *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986) (emphasizing § 1983's purpose to provide remedies for constitutional violations)
[53] See *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (requiring a clear showing of willful misconduct directly related to the matter in litigation)
[54] See *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975) (rejecting equitable defense in § 1983 action absent specific facts showing direct nexus to plaintiff's claim)

## 8.3. SIXTEENTH AFFIRMATIVE DEFENSE (AFTER-ACQUIRED EVIDENCE)

8.3.1. Plaintiff moves to strike Defendants' after-acquired evidence affirmative defense pursuant to Federal Rule of Civil Procedure 12(f) as frivolous, inapplicable, and impertinent. This is a 42 U.S.C. § 1983 action for constitutional rights violations against municipal and state actors, not an employment case. Plaintiff is not, has never been, and will never be an employee or employer of any Defendant.[55] The defense applies exclusively to employment discrimination statutes and no federal court has ever extended after-acquired evidence to § 1983 constitutional claims outside the employer-employee context. Constitutional violations by government actors are complete when committed and cannot be retroactively justified by subsequently discovered evidence.

8.3.2. The defense is impertinent as it seeks to import irrelevant employment law concepts into constitutional civil rights litigation where they have no legal basis. Allowing this defense to be reserved would prejudice Plaintiff by granting Defendants license to engage in a fishing expedition that would force her to defend against the merits of a legally baseless defense without the ability to strike it. It would also allow Defendants discovery access into Plaintiff's personal life under the guise of a reserved affirmative defense, which would violate Federal Rule of Civil Procedure 1's requirement of just, speedy, and inexpensive determination of cases by creating costly, burdensome, and irrelevant discovery that causes delay and would not go to the merits of the constitutional claims while potentially requiring protective orders

---

[55] See *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995) (The McKennon doctrine could limit front pay and bar reinstatement of employment with Defendants)

1    to prevent abuse.

2  8.3.3. This defense is an improper attempt to search Plaintiff's personal life to show she

3    is a "bad person" to justify or limit Defendants' constitutional violations, when

4    Plaintiff's previous convictions, previous employment, previous traffic tickets, or

5    any other previous acts are completely irrelevant to this constitutional rights action

6    under 42 U.S.C. § 1983 and cannot excuse government actors' deliberate violations

7    of Plaintiff's constitutional rights.

### 8.4. SEVENTEENTH AFFIRMATIVE DEFENSE (*HECK V. HUMPHREY*)

8  8.4.1. The *Heck* doctrine does not apply to Plaintiff's claims because they do not chal-

9    lenge the validity or legality of any criminal conviction.

10  8.4.2. The County Court dismissed all charges in July 2023 after finding constitutional

11    violations, meaning there is no conviction to be invalidated. Even if there had been

12    a conviction, Plaintiff's § 1983 claims seeks redress for violations of secured rights.

13  8.4.3. Success on Plaintiff's claims would not "necessarily imply the invalidity" of any

14    conviction, as required by *Heck*, because they address procedural violations and re-

15    taliatory conduct that are independent of guilt or innocence on the underlying

16    charges. As the Supreme Court stated, "if the district court determines that the

17    plaintiff's action, even if successful, will not demonstrate the invalidity of any out-

18    standing criminal judgment against the plaintiff, the action should be allowed to

19    proceed."[56] Here, there is no outstanding criminal judgment, and the constitutional

20    violations complained of are independent of the merits of any criminal charges.

---

[56] *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)

## 9. "AFFIRMATIVE DEFENSES" THAT ONLY FAIL *WOODFIELD*

### 9.1. SECOND AFFIRMATIVE DEFENSE (STATUTE OF LIMITATIONS)

9.1.1. Plaintiff moves to strike Defendant's First Affirmative Defense as insufficient under Fed. R. Civ. P. 8(c) and 12(f) because Defendant's bare assertion that "Plaintiff's claims are barred by the applicable statute of limitations" fails to identify the specific statute invoked, when the cause of action allegedly accrued, the applicable limitations period, or any factual basis supporting the defense, thereby depriving Plaintiff of fair notice of this critical affirmative defense.

9.1.2. Defendants' conclusory statute of limitations defense fails to identify[57] the applicable Mississippi statute, accrual date, or factual basis for untimeliness, violating Rule 8(c)'s specificity requirement.[58] The Supreme Court requires defendants to specify accrual[59] under federal law and the relevant state limitations period.[60] Without these details, the defense provides no fair notice and warrants striking.

> "Because no specified federal statute of limitations exists for § 1983 suits, federal courts borrow the forum state's general or residual personal-injury limitations period, (internal citation omitted), which in Mississippi is three years, Miss.Code Ann. § 15-1-49."
> *Edmonds v. Oktibbeha County*, 675 F.3d 911, 916 (5th Cir. 2012)

### 9.2. FIFTH AFFIRMATIVE DEFENSE (NO MUNICIPAL LIABILITY)

9.2.1. Defendants' Fifth Affirmative Defense merely states that "Municipal Defendants are not liable under the theories alleged by Plaintiff," providing no factual basis whatsoever for this conclusory assertion. Under *Woodfield*, affirmative defenses

---

57 See *Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011)
58 *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008)
59 *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007)
60 *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)

must be pleaded with sufficient specificity to give the plaintiff "fair notice," which requires "factual articulation sufficient to prevent unfair surprise."

9.2.2. This bare legal conclusion violates Rule 8(b)'s requirement for factual matter showing entitlement to avoidance. Instead, Defendants force Plaintiff to guess their theory of non-liability, whether based on lack of policy, absence of custom, proper supervision, or other grounds.

9.2.3. Moreover, the defense creates irreconcilable contradictions requiring factual development that cannot proceed without fair notice of Defendants' position. If Stuart acted independently, this suggests municipal supervisory liability for failure to train or supervise; if he acted with authority as final policymaker, his actions create direct liability. The current pleading identifies neither theory, preventing meaningful discovery while creating unfair surprise. The defense should therefore be stricken for failure to meet basic pleading requirements, though factual development through properly noticed discovery may ultimately be necessary to resolve municipal liability questions.

### 9.3. SIXTH AFFIRMATIVE DEFENSE (PUNITIVE DAMAGES PROHIBITION)

9.3.1. Defendants' Sixth Affirmative Defense regarding punitive damages should be stricken as it fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(b) and the fair notice standard established in *Woodfield*. Like Defendants' other affirmative defenses, this defense provides no factual basis whatsoever, leaving Plaintiff to guess what specific legal theory or factual circumstances allegedly bar punitive damages.

9.3.2. The defense states merely a legal conclusion without any supporting factual matter. Under *Woodfield*, affirmative defenses must be pleaded with sufficient specificity to give the plaintiff "fair notice" and prevent "unfair surprise."[61]

9.3.3. This defense particularly exemplifies the unfair surprise created by Defendants' bare legal conclusions because it forces contradictory positions regarding municipal and individual liability. The defense creates irreconcilable contradictions for Defendants: if Stuart acted independently without municipal authority, this would establish potential municipal supervisory liability under *Monell*[62] for failure to supervise. Conversely, if Stuart acted with municipal authority as final policymaker, his actions would create direct municipal liability while potentially barring substantial individual punitive damages. Defendants cannot claim immunity from both individual and municipal liability without providing factual support for their theory.

9.3.4. The defense should be stricken because it fails to meet basic Rule 8 requirements by providing no factual articulation of the claimed basis for punitive damages immunity, creating unfair surprise and preventing meaningful responsive pleading or targeted discovery.

### 9.4. EIGHTEENTH AFFIRMATIVE DEFENSE (SPECIAL DAMAGES)

9.4.1. This defense provides no substantive content and fails to specify any legal theory for challenging damages. It violates the fair notice pleading requirements of *Woodfield*. Defendants' eighteenth affirmative defense asserts that "Plaintiff failed to plead special damages with the required specificity." This defense is legally insuffi-

---

61 *Woodfield*, 193 F.3d at 362
62 *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)

1    cient for three reasons:

2    9.4.2. First, Plaintiff has not pled any special damages in this action. Special damages are

3       those that are not the necessary or inevitable result of the defendant's conduct, and

4       must be specifically stated under Fed. R. Civ. P. 9(g). Plaintiff's complaint seeks

5       compensatory and punitive damages that naturally flow from the alleged constitu-

6       tional violations, not special damages requiring heightened pleading.

7    9.4.3. Second, in § 1983 cases, compensatory damages for constitutional violations, in-

8       cluding damages for pain and suffering, emotional distress, and other intangible in-

9       juries, are considered general damages,[63] not special damages.[64]

## 10. CONCLUSION

10   WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's Motion

11   to Strike Affirmative Defenses as follows;

12   Strike the following affirmative defenses **WITHOUT PREJUDICE:**

13   Defendants' First Aff. Def. (Failure to State a Claim), without prejudice to Defendants'

14   right to raise this issue through proper procedural vehicles under Rule 12; Defendants'

15   Second Aff. Def. (Statute of Limitations); Defendants' Third Aff. Def. (Standing); Defen-

16   dants' Fifth Aff. Def. (No Municipal Liability); Defendants' Sixth Aff. Def. (Punitive

17   Damages Prohibition); Defendants' Eighteenth Aff. Def. (Special Damages); and Defen-

18   dants' Nineteenth Aff. Def. (Damage Caps)

19   Strike the following affirmative defenses **WITH PREJUDICE:**

---

63  See *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) (recognizing that
    compensatory damages in § 1983 cases may include "not only out-of-pocket loss and other monetary
    harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish
    and suffering")
64  Fed. R. Civ. P. 9(g)

1  Defendants' Seventh Aff. Def. (Mississippi Tort Claims Act); Defendants' Eighth Aff.

2  Def. (Estoppel and Res Judicata); Defendants' Ninth Aff. Def. (Good Faith/Honest Be-

3  lief); Defendants' Tenth Aff. Def. (Comparative Fault); Defendants' Eleventh Aff. Def.

4  (Failure to Exhaust Administrative Remedies); Defendants' Twelfth Aff. Def. (Failure to

5  Mitigate); Defendants' Thirteenth Aff. Def. (Adequate State Remedy); Defendants' Four-

6  teenth Aff. Def. (Reservation of FRCP 8(c) Defenses); Defendants' Fifteenth Aff. Def.

7  (Unclean Hands); Defendants' Sixteenth Aff. Def. (After-Acquired Evidence); Defendants'

8  Seventeenth Aff. Def. (Heck v. Humphrey); and Defendants' Twentieth Aff. Def. (Attor-

9  ney's Fees)

10  Strike Defendants' Fourth Aff. Def. (Qualified Immunity, Sovereign Immunity, Legisla-

11  tive Immunity, and/or Absolute Immunity) as to the City of Guntown only, and without

12  prejudice as to Defendant Stuart; and

13  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 22 day of May , 2025.

Tracy Miller Arnold
Pro Se
423-529-4335
PO Box 864
Savannah, Tennessee 38372
tracy.knightswife@gmail.com

## CERTIFICATE OF SERVICE

I certify that on May 22, 2025, a copy of the following:

PLAINTIFF'S OPPOSED MOTION TO STRIKE AFFIRMATIVE DEFENSES

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AFFIRMATIVE DEFENSES

was served by certified US mail, digital signature requested, to the following attorneys representing Defendants City of Guntown and Andrew Stuart via USPS to:

Sonya Dickson
Phelps Dunbar LLP
1905 Community Bank Way
Suite 200
Flowood, MS 39232
sonya.dickson@phelps.com
Tracking #

9510 8160 2727
5142 5987 49

Todd Butler
Phelps Dunbar LLP
1905 Community Bank Way
Suite 200
Flowood, MS 39232
todd.butler@phelps.com
Tracking #

5/22/25

Tracy Miller Arnold
Pro Se
423-529-4335
PO Box 864
Savannah, Tennessee 38372
tracy.knightswife@gmail.com