## AT THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI

Tracy Miller Arnold
Plaintiff

vs.

CITY OF GUNTOWN, Andrew Stuart in his Individual and Official Capacities
Defendant

Cause # 1:25-CV-24-GHD-DAS

RECEIVED

JUN 10 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON OFFICIAL LIABILITY

1. Introduction..........................................................................................................................1
2. Statement of Facts...............................................................................................................3
    2.1. The Judicial Proceedings and Unchallenged Constitutional Findings.................3
    2.2. Systematic Institutional Failures and Deliberate Indifference..............................4
3. Legal Standards....................................................................................................................5
4. Argument...............................................................................................................................6
    4.1. Due Process and Sixth Amendment Violations.......................................................6
    4.2. Substantive Due Process Violations Through Conscience-Shocking Conduct....7
    4.3. Fourth Amendment Violations Through Void Warrants.....................................10
    4.4. First Amendment Retaliation Through Unprecedented Escalation...................11
    4.5. Municipal Liability Through Multiple Independent Theories............................12
        4.5.1. Andrew Stuart as Final Policymaker.............................................................12
        4.5.2. Deliberate Indifference Through Systematic Failures................................12
        4.5.3. Pattern and Custom of "No Supervision" Enabling Constitutional Violations........13
        4.5.4. Nine-Year "No Supervision" Custom as Overarching Framework.........13
        4.5.5. Court Order Disregard as Product of "No Supervision" Custom............14
        4.5.6. Annual Municipal Ratification Through Deliberate Inaction..................15
        4.5.7. Custom as Moving Force Behind All Constitutional Violations.............15
5. Summary-Judgment Evidence.........................................................................................16
6. Conclusion..........................................................................................................................17

### 1. INTRODUCTION

1.1. Plaintiff, Tracy Miller Arnold, respectfully requests partial summary judgment on liability against Defendants City of Guntown and Andrew Stuart in their official capacities.

1.2. This case presents extraordinary circumstances where Judge Stephen Spencer's June 8, 2023 Memorandum Opinion made explicit, unchallenged findings that Defendants violated Plaintiff's constitutional rights. The City neither responded to these findings when given ten days to do so, nor appealed or sought reconsideration, leaving them as final judicial determinations.

1.3. These unchallenged findings, court records and independent audits establish that Defendants: (a) failed to provide constitutionally adequate notice of charges for five years after being ordered to do so; (b) issued void arrest warrants and pursued collections while lacking jurisdiction during Plaintiff's appeal; (c) systematically retaliated against Plaintiff for exercising her appeal rights; (d) demonstrated deliberate indifference through nine consecutive years of ignored audit warnings about deficient court operations; and (e) engaged in conscience-shocking conduct through systematic abandonment of constitutional obligations in favor of revenue generation.

1.4. Municipal liability is established through multiple independent theories. Andrew Stuart exercised final policymaking authority as demonstrated by his unprecedented decision to seek jail time immediately after Plaintiff's appeal, his five-year failure to comply with court orders, and the City's direction of all litigation matters to him. Additionally, the City's Deliberate Indifference to municipal duties produced a systematic 'no supervision' custom that enabled disregard for court orders and constitutional violations. This custom operated without basic supervisory safeguards despite repeated professional warnings, with the City ratifying unconstitutional acts and resulting in conscience-shocking institutional conduct.

## 2. STATEMENT OF FACTS

### 2.1. THE JUDICIAL PROCEEDINGS AND UNCHALLENGED CONSTITUTIONAL FINDINGS

2.1.1. On June 8, 2023, Judge Spencer issued a Memorandum Opinion[1] analyzing Plaintiff's Petition to Dismiss for Lack of Prosecution and Failure to Provide Due Process.[2] The court made explicit constitutional findings after applying federal constitutional standards, including the *Barker v. Wingo* four-factor test for speedy trial violations.[3]

2.1.2. Judge Spencer found that in April 2018, the County Court had ordered the City to file amended affidavits because "the Defendant was not properly notified of her charges and thus her due process rights are at issue."[4] Despite this order, "Guntown decided against filing the Amended Affidavits and thus, never reset the matter for trial" for over five years.[5]

2.1.3. The court found that during this five-year period, "Guntown has continually sent her notices demanding that she pay her outstanding fines" and "has issued arrest warrants for Arnold based on her failure to pay" while "this matter is on appeal and has been for over five years."[6] The court ruled definitively: "This should not happen... Guntown should not be attempting to collect these fines as there is no final order in this matter and any warrants for Arnold's arrest as a result of not paying these fines should be immediately stricken."[7]

---

1 See Doc. No. [1-3]
2 Ex. p11 (Petition to Dismiss for Lack of Prosecution and Failure to Provide Due Process)
3 *Barker v. Wingo*, 407 U.S. 514 (1972); See Doc. No. [1-3] at 3-8.
4 See Doc. No. [1-3] at 5, ¶ 2.
5 See Doc. No. [1-3] at 5, ¶ 3.
6 See Doc. No. [1-3] at 6, ¶ 2.
7 See Doc. No. [1-3] at 6, ¶ 3.

2.1.4. After analyzing the constitutional implications, Judge Spencer concluded: "the delay in this matter violated the Defendant's Constitutional right to Due Process."[8] When given ten days to respond, "The City of Guntown has not filed any response as required by the Memorandum Opinion."[9] The City never appealed these findings.[10]

## 2.2. Systematic Institutional Failures and Deliberate Indifference

2.2.1. From 2015 through 2023, independent auditors issued identical findings each year warning that "a single employee is in charge of fine collections, docket entry, and warrant issuances."[11] These "SIGNIFICANT DEFICIENCIES" were reported to the Mayor and Board of Aldermen annually, yet no corrective action sufficient to alter the findings were taken.[12]

2.2.2. The Supreme Court has never recognized municipal size or other challenges as a justification for failing to implement constitutional safeguards. Under *Canton*, municipalities are liable when:

> "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)

2.2.3. The City admitted to Plaintiff in 2022 that it had no method for tracking whether a case was on appeal[13] while simultaneously authorizing American Municipal Ser-

---

8 See Doc. No. [1-3] at 7, ¶ 2.
9 Ex. p4, County Court Order (July 5, 2023).
10 Ex. p26, Lee County Court Docket (showing final entry as dismissal order with no subsequent appeal filings).
11 Ex. p15-p23, Annual Audit Reports (2015-2023).
12 Each audit report was presented to the Mayor and Board of Aldermen.
13 Ex. p14, Tracy Arnold Affidavit.

vices (AMS) to pursue collections. Under the AMS Terms of Service, the City is 'joint controller'[14] and retained responsibility for content[15], and AMS disclaimed any legal compliance.[16]

2.2.4. When Plaintiff received arrest warrant notices beginning in July 2022, she contacted the City and was directed to "talk to Andrew Stuart."[17] Despite repeated attempts to reach Stuart about the constitutional violations, he never responded.[18] When Plaintiff filed her Motion to Dismiss in April 2023, explicitly documenting the constitutional violations and serving it on the Mayor and Stuart, the City's response was to file a motion seeking immediate trial and up to 18 months imprisonment while claiming to know "no reason" the case should not proceed.[19]

### 3. LEGAL STANDARDS

3.1. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In reviewing a motion for summary judgment, the court must

---

[14] Ex. p12, AMS Terms of Service at 4 ("Personal Data" section establishing joint controller relationship).
[15] Ex. p12, at 1-2 ("Content" section "You are responsible for all materials and data...")
[16] Ex. p12, at 3, ¶ 2 ("AMS, ITS AFFILIATES AND SUPPLIERS DISCLAIM ANY REPRESENTATIONS OR WARRANTIES THAT YOUR USE OF THE SERVICES WILL SATISFY OR ENSURE COMPLIANCE WITH ANY LEGAL OBLIGATIONS OR LAWS OR REGULATIONS.")
[17] Ex. p14, Tracy Arnold Affidavit.
[18] Ex. p14, Tracy Arnold Affidavit.
[19] See Doc. No. [1-2], City's Motion to Set Trial (May 24, 2023).

1  view the evidence in the light most favorable to the nonmoving party. *Anderson v.*
2  *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).
3  3.2. To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must demon-
4  strate: (1) a constitutional violation; (2) an official policy or custom; and (3) that
5  the policy or custom was the "moving force" behind the constitutional violation.
6  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).
7  3.3. Here, unchallenged judicial findings conclusively establish constitutional violations.
8  Municipal liability follows through Andrew Stuart's final policymaking authority
9  and the City's systematic customs of constitutional indifference.

## 4. ARGUMENT

### 4.1. DUE PROCESS AND SIXTH AMENDMENT VIOLATIONS

10  4.1.1. The Fourteenth Amendment's Due Process Clause and the Sixth Amendment's
11  guarantee of notice and speedy trial protect criminal defendants from the precise vi-
12  olations that occurred here. Judge Spencer's unchallenged findings establish these
13  violations conclusively.
14  4.1.2. Applying the federal *Barker v. Wingo* four-factor test, Judge Spencer found: (a)
15  the five-year delay was "obviously the triggering event" requiring constitutional
16  analysis; (b) the City bore sole responsibility for the delay because it "decided
17  against filing the Amended Affidavits"; (c) Plaintiff had no burden to push for the
18  City's compliance with court orders; and (d) she demonstrated "sufficient evidence

of 'anxiety and concern of the convicted party awaiting the outcome of the appeal.'"[20]

4.1.3. The court's ultimate finding that "the delay in this matter violated the Defendant's Constitutional right to Due Process" represents a judicial determination applying federal constitutional standards.[21] Because Defendants had full opportunity to contest these findings but failed to respond, appeal, or seek reconsideration;[22] the findings are entitled to preclusive effect under *Allen v. McCurry*, 449 U.S. 90 (1980) and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).

### 4.2. SUBSTANTIVE DUE PROCESS VIOLATIONS THROUGH CONSCIENCE-SHOCKING CONDUCT

4.2.1. The evidence establishes multiple substantive due process violations that independently and collectively "shock the conscience" under *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Unlike procedural due process, substantive due process protects against government conduct so egregious that it violates fundamental principles of justice regardless of procedural adequacy. The totality of Defendants' conduct, spanning nine years of deliberate indifference, five years of court order defiance, and continued violations after judicial determination,[23] presents precisely the type of conscience-shocking abuse of power that substantive due process prohibits.

4.2.2. Nine Years of Deliberate Indifference to Known Constitutional Risks. A shocking

---

[20] See Doc. No. [1-3] at 6-7 (applying factors from *Barker v. Wingo*, 407 U.S. 514 (1972) and *U.S. v. Tucker*, 603 F.2d 1299 (8th Cir. 1979)).
[21] See Doc. No. [1-3] at 7, ¶ 2.
[22] Ex. p26 at 2, Entry 21-22.
[23] See Doc. No. [1-4] (The City did not respond to the Court.)

aspect of this case is Defendants' systematic indifference to repeated professional warnings. From 2015 through 2023, independent CPA auditors identified identical "SIGNIFICANT DEFICIENCIES" in every annual audit, explicitly warning that "a single employee is in charge of fine collections, docket entry, and warrant issuances."[24] Each audit recommended segregation of duties to prevent precisely the constitutional violations that occurred here. This nine-year pattern of deliberate indifference shocks the conscience because Defendants received explicit professional warnings annually yet chose to prioritize other concerns over basic constitutional safeguards.

4.2.3. Five Years of Defiant Non-Compliance with Constitutional Court Orders. Even more shocking is Defendants' deliberate five-year refusal to comply with explicit court orders designed to cure constitutional violations. In April 2018, the County Court found the charging documents constitutionally deficient and ordered amendments.[25] Despite this clear mandate, Judge Spencer found that Defendants "decided against filing the Amended Affidavits and thus, never reset the matter for trial."[26] This was not neglect or oversight, it was a deliberate policy decision maintained for five years while simultaneously pursuing enforcement actions.

4.2.4. Systematic Enforcement While Admitting Inability to Ensure Constitutionality. Equally shocking is Defendants' admission that they had no method for tracking whether a case was on appeal while simultaneously pursuing enforcement actions

---

[24] Ex. p15-p23, Annual Audit Reports (2015-2023) (each identifying findings 2015-001 through Finding 2023-001 regarding lack of segregation of duties in court operations.)
[25] Ex. p10 at 17, line 5 (THE COURT: I told you to amend)
[26] See Doc. No. [1-3] at 5, ¶ 3.

including arrest warrants and collection demands.[27] Between July 2022 and April 2023, Defendants sent four collection notices with three explicitly threatening arrest on void warrants while knowing they lacked systems to verify jurisdictional authority.[28] The conscience-shocking nature lies in its deliberate quality, Defendants chose to pursue enforcement without ensuring constitutional compliance, prioritizing revenue collection over fundamental rights.

4.2.5. Continuation of Deliberate Indifference After Judicial Determination. On June 8, 2023, the County Court issued comprehensive findings that Defendants violated Plaintiff's constitutional rights. Judge Spencer gave Defendants ten days to respond. The July 5, 2023 order explicitly states: "The City of Guntown has not filed any response as required by the Memorandum Opinion."[29] This failure to respond after judicial determination represents conscience-shocking disregard for constitutional authority and individual rights that violates substantive due process as a matter of law.

4.2.6. When viewed comprehensively, Defendants' conduct reveals systematic abandonment of constitutional obligations in favor of revenue generation, demonstrating both intent to harm and deliberate indifference under *Lewis*. The systematic nature spanning multiple constitutional amendments over five years, combined with nine years of ignored warnings and post-judicial finding silence, establishes textbook conscience-shocking conduct.

---

[27] Ex. p14, Tracy Arnold Affidavit (documenting City's admission during 2022 inquiry about improper warrant enforcement during pending appeal).
[28] See Doc. No. [1-1] page 2-5, AMS Collection Notices (July 2022, October 2022, January 2023, April 2023).
[29] See Doc. No [1-4], County Court Order (July 5, 2023).

### 4.3. FOURTH AMENDMENT VIOLATIONS THROUGH VOID WARRANTS

4.3.1. The Fourth Amendment protects against unreasonable seizures, including through void warrants. Warrants issued without jurisdiction are void ab initio and per se unreasonable.

4.3.2. Judge Spencer found that Defendants issued arrest warrants and pursued collections while Plaintiff's case "is on appeal and has been for over five years."[30] Under Mississippi law, a trial de novo appeal transfers jurisdiction completely to the appellate court, making the lower court "as if there had never been a trial."[31] Any warrants issued by the municipal court during this appeal period were void ab initio.

4.3.3. The systematic issuance of void warrants constituted seizure under *United States v. Mendenhall*, 446 U.S. 544 (1980), as the official notices threatening arrest would make any reasonable person believe they were not free to leave or travel normally. Plaintiff's forced curtailment of travel to avoid arrest on void warrants demonstrates actual seizure.[32]

4.3.4. The City's admission that it had "no method for tracking whether a case was on appeal" while authorizing collection activities shows deliberate indifference to Fourth Amendment requirements. This willful blindness, combined with nine years of audit warnings about the single employee handling warrant issuances without oversight, establishes the systematic nature of the violations.

---

30 See Doc. No. [1-3] at 6, ¶ 3.
31 *Caissie v. Mississippi*, 254 So. 3d 849, 852 (Miss. Ct. App. 2018).
32 Ex. p14, Tracy Arnold Affidavit (describing fear of arrest affecting travel).

### 4.4. FIRST AMENDMENT RETALIATION THROUGH UNPRECEDENTED ESCALATION

4.4.1. To establish First Amendment retaliation, a plaintiff must show protected activity, adverse action that would chill ordinary people, and causation. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

4.4.2. Plaintiff's exercise of her appeal rights constitutes protected First Amendment petitioning activity. The retaliatory response was immediate and unprecedented. At the municipal level, Stuart stated that jail time was not required for these misdemeanor charges.[33] However, at the first county court hearing after Plaintiff's appeal, Stuart requested jail time, later admitting: "This is the first time I have ever come into this court in five years of being a prosecutor in Guntown and asked that if someone is convicted that they go to jail."[34]

4.4.3. The temporal proximity between Plaintiff's appeal and Stuart's unprecedented jail request establishes causation. The Fifth Circuit recognizes that "close timing between [plaintiff's] protected activity and an adverse action... may provide the 'causal connection' required to make out a prima facie case of retaliation."[35]

4.4.4. The retaliation continued through a six-year pattern: no jail sought at municipal level (2017),[36] unprecedented jail request after appeal (2018),[37] five years of deliberate non-compliance with court orders (2018-2023),[38] systematic warrant threats

---

[33] Ex. p7 at 25, lines 7-10 (Municipal Court Transcript); Ex p8 (jail not mentioned).
[34] Ex. p9 at 41, lines 17-22 (County Court Transcript, Jan. 10, 2018).
[35] *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).
[36] Ex. p7 and p8
[37] Ex. p9 at 4, lines 6-8; Ex. p9 at 41, lines 17-22.
[38] Ex. p10 at 8, lines 5-11; Ex. p10 at 10, lines 10-21; Ex. p10 at 12, lines 2-24; See Doc. No. [1-3]; See Doc. No. [1-4]

during appeal (2022-2023),[39] and seeking maximum allowable imprisonment when challenged about constitutional violations (2023).[40]

### 4.5. MUNICIPAL LIABILITY THROUGH MULTIPLE INDEPENDENT THEORIES

#### 4.5.1. ANDREW STUART AS FINAL POLICYMAKER

4.5.1.1. Municipal liability attaches when an official with final policymaking authority violates constitutional rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

4.5.1.2. The undisputed evidence establishes Stuart's final policymaking authority. City personnel stated they would need to check with Andrew first before filing court paperwork.[41] When Plaintiff contacted the City about constitutional violations, she was directed to "talk to Andrew Stuart."[42] Stuart's unprecedented decision to seek jail time, which he acknowledged was the first time in five years, demonstrates his authority to establish litigation policy.[43]

4.5.1.3. Stuart's policy decisions, including the retaliatory jail request and five-year non-compliance with court orders, are directly attributable to the City under *Pembaur*.

#### 4.5.2. DELIBERATE INDIFFERENCE THROUGH SYSTEMATIC FAILURES

4.5.2.1. The City demonstrated deliberate indifference by ignoring nine consecutive years of audit warnings about the same structural deficiency. The auditors specifically

---

39 See Doc. No. [1-1] pages 2-5
40 See Doc. No. [1-2]
41 Ex. p13 (Bill Arnold Affidavit).
42 Ex. p14 (Tracy Arnold Affidavit).
43 Ex. p9 at 4, lines 6-8; Ex. p9 at 41, lines 17-22.

identified that having a single employee handle "fine collections, docket entry, and warrant issuances" without oversight created significant risks.[44]

4.5.2.2. These warnings made the constitutional violations foreseeable. The City's admission that it had "no method for tracking whether a case was on appeal" confirms the direct link between the identified deficiencies and the constitutional violations that occurred. Under *City of Canton v. Harris*, 489 U.S. 378 (1989), this conscious disregard of obvious constitutional risks establishes municipal liability.

4.5.3. PATTERN AND CUSTOM OF "NO SUPERVISION" ENABLING CONSTITUTIONAL VIOLATIONS

4.5.3.1. The evidence establishes a persistent municipal custom of operating without supervision that enabled all constitutional violations. Under *Webster*, municipal liability attaches when customs are sufficiently frequent and patterned to give rise to reasonable inference that officials know employees engage in constitutional violations with impunity.[45]

4.5.4. NINE-YEAR "NO SUPERVISION" CUSTOM AS OVERARCHING FRAMEWORK

4.5.4.1. Independent auditors documented identical findings each year that "a single employee is in charge of fine collections, docket entry, and warrant issuances" without oversight or segregation of duties.[46] This "no supervision" custom operated as the overarching institutional framework that enabled all other constitutional violations

---

[44] Ex. p15-p23 (identifying this deficiency in Finding 2015-001 through Finding 2023-001).
[45] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).
[46] Ex. p15-p23, Annual Audit Reports (2015-2023) (each identifying Finding 2015-001 through Finding 2023-001 regarding lack of segregation of duties in court operations).

by creating an environment where critical governmental functions affecting the people's constitutional rights operated without detection, correction, or accountability.

4.5.4.2. The "no supervision" custom extended beyond the municipal court employee to encompass complete absence of supervisory oversight over Andrew Stuart's litigation decisions. City personnel stating they "would need to ask Andrew first" demonstrates that even basic court filings[47] required Stuart's approval, yet Stuart himself operated without any supervisory oversight from city officials. This dual absence of supervision, over both the court employee and the litigation attorney, created the institutional environment that enabled systematic constitutional violations.

4.5.5. COURT ORDER DISREGARD AS PRODUCT OF "NO SUPERVISION" CUSTOM

4.5.5.1. The deliberate five-year failure to comply with court orders resulted directly from the "no supervision" custom. Because the City provided no oversight of litigation matters it was involved in, Stuart's decision to ignore judicial mandates operated without any supervisory review or accountability. The "no supervision" custom transformed court order compliance from mandatory institutional duty to discretionary individual choice, enabling the systematic disregard that violated Plaintiff's constitutional rights.

4.5.5.2. This institutional abandonment of supervisory responsibility over litigation matters is evidenced by the City's response to explicit constitutional notice. When Plaintiff's April 2023 motion documented five years of court order non-compliance and served it directly on the Mayor[48] and Stuart, no evidence exists of any supervisory

---

47 Ex. p13, Bill Arnold Affidavit (documenting City personnel statement that they "would need to ask Andrew first" before filing court paperwork).
48 Ex. p11 at 8, USPS tracking # 7019 2970 0000 1807 2434

inquiry or oversight implementation.[49] Instead, the City's response through Stuart proceeded without any supervisory review, demonstrating continued adherence to the "no supervision" custom even when constitutional violations were explicitly documented.

### 4.5.6. Annual Municipal Ratification Through Deliberate Inaction

4.5.6.1. The "no supervision" custom received annual deliberate non-response to professional warnings. The Mayor and Board of Aldermen received identical audit warnings for nine consecutive years identifying the exact institutional deficiencies that enabled constitutional violations, yet consciously chose to maintain these operations without implementing recommended safeguards.[50] This annual ratification demonstrates institutional endorsement of the "no supervision" custom as municipal policy.

### 4.5.7. Custom as Moving Force Behind All Constitutional Violations

4.5.7.1. The "no supervision" custom was the direct moving force behind each category of constitutional violation: (a) void warrants resulted from lack of supervision over the employee handling warrant issuances; (b) notice violations resulted from lack of supervision over Stuart's litigation decisions; (c) retaliation resulted from lack of supervision enabling Stuart's unprecedented escalations; and (d) the overall pattern of conscience-shocking conduct resulted from institutional abandonment of supervi-

---

[49] See Doc. No. [1-2], City's Motion to Set Trial (May 24, 2023) (seeking immediate trial and maximum 18-month imprisonment five weeks after receiving explicit constitutional notice through Plaintiff's Motion to Dismiss, with no evidence of supervisory review or constitutional compliance inquiry).
[50] Ex. p15-p23 (audit reports presented annually to Mayor and Board of Aldermen).

sory duties that the Constitution requires for protection of the people's fundamental rights.

4.5.7.2. Under *Webster v. City of Houston*, this interconnected custom satisfies municipal liability requirements because it demonstrates sufficient frequency and pattern to establish municipal awareness of constitutional violations occurring with impunity.[51] The custom was so permanent and well-settled that it operated with the force of law, as evidenced by the City's complete operational dependence on unsupervised individual decision-making despite nine years of professional warnings about constitutional risks.[52]

## 5. SUMMARY-JUDGMENT EVIDENCE

5.1. In support of this motion, plaintiff submits the following evidence, incorporated by reference:

5.1.1. Judicial Findings. The June 8, 2023 Memorandum Opinion and July 5, 2023 Order establish constitutional violations and the City's failure to respond.

5.1.2. Audit Reports. Nine years of audit reports (2015-2023) establish systematic deficiencies and deliberate indifference.

5.1.3. Affidavits. The affidavits of Tracy Arnold and Bill Arnold establish the City's admissions and Stuart's retaliatory conduct.

5.1.4. Court Transcripts. Transcripts from municipal and county proceedings establish the escalation from no jail to unprecedented jail requests, findings of insufficient notice of nature and cause, and on-record order to amend charges.

---

51 *Webster v. City of Houston*, 735 F.2d at 841.
52 *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

5.1.5. Documentary Evidence. Collection notices, court dockets, and the AMS Terms of Service establish the systematic warrant threats and agency relationship.

## 6. CONCLUSION

6.1. The unchallenged judicial findings establish constitutional violations as a matter of law. Municipal liability follows through Stuart's final policymaking authority and the City's systematic "no supervision" custom that enabled conscience-shocking conduct. For these reasons, plaintiff asks the court to grant this motion and render partial summary judgment on liability for Counts 5.1 (Retaliation), 5.3 (Due Process), 5.4 (Fourth Amend.), 5.6 (Notice), 5.7 (Speedy Trial), and 5.8 (Monell) against all defendants in their official capacities.

Respectfully submitted this 6th day of June, 2025.

_____ 6-6-25
Tracy Miller Arnold
Pro Se
423-529-4335
PO Box 864
Savannah, Tennessee 38372
tracy.knightswife@gmail.com

RECEIVED
JUN 10 2025
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

## CERTIFICATE OF SERVICE

I certify that on June __6__, 2025, a copy of the following:

Plaintiff's Motion For Partial Summary Judgment on Official Liability
Plaintiff's Memorandum in Support of Motion For Partial Summary Judgment on Official Liability

| | |
|---|---|
| Exhibit p7 | Guntown Municipal Hearing 6-8-2017 Transcript |
| Exhibit p8 | Guntown Municipal Trial 9-14-2017 Transcript |
| Exhibit p9 | Lee County Hearing 1-10-2018 Transcript |
| Exhibit p10 | Lee County Hearing 4-11-2018 Transcript |
| Exhibit p11 | April 2023 Motion to Dismiss |
| Exhibit p12 | American Municipal Services, AMS, Terms of Service |
| Exhibit p13 | Bill Arnold's Affidavit |
| Exhibit p14 | Tracy Arnold's Affidavit |
| Exhibit p15 | 2015 FFJW Independent Audit Letter and Findings |
| Exhibit p16 | 2016 FFJW Independent Audit Letter and Findings |
| Exhibit p17 | 2017 FFJW Independent Audit Letter and Findings |
| Exhibit p18 | 2018 FFJW Independent Audit Letter and Findings |
| Exhibit p19 | 2019 FFJW Independent Audit Letter and Findings |
| Exhibit p20 | 2020 FFJW Independent Audit Letter and Findings |
| Exhibit p21 | 2021 FFJW Independent Audit Letter and Findings |
| Exhibit p22 | 2022 FFJW Independent Audit Letter and Findings |
| Exhibit p23 | 2023 FFJW Independent Audit Letter and Findings |
| Exhibit p26 | Lee Count Miss. Electronic Courts 'Guntown v Arnold' docket |

was served by certified US mail, digital signature requested, to the following attorneys representing Defendants City of Guntown and Andrew Stuart via USPS to:

Sonya Dickson
Phelps Dunbar LLP
1905 Community Bank Way
Suite 200
Flowood, MS 39232
sonya.dickson@phelps.com
Tracking #

9505 5154 1382
5157 8358 77

Todd Butler
Phelps Dunbar LLP
1905 Community Bank Way
Suite 200
Flowood, MS 39232
todd.butler@phelps.com
Tracking #

*Tracy Miller Arnold* 6-6-25

Tracy Miller Arnold
Pro Se
423-529-4335
PO Box 864
Savannah, Tennessee 38372
tracy.knightswife@gmail.com

1 of 1



USPS Express Mail label

FROM: Tracy Arnold
PO Box 864
Savannah, Tenn 38372
PHONE: (425) 525-9335

TO: Office of the Clerk
911 Jackson Ave. E, Ste 369
Oxford, Miss
ZIP: 38655

Postage: $35.85
Date Accepted: 6-6-25
Time Accepted: 10:14
Scheduled Delivery: 6-9-25 6:00 PM

X-RAYED

EXTREMELY URGENT — Please Rush To Addressee

RECEIVED JUN 10 2025
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI