AT THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF MISSISSIPPI

Tracy Miller Arnold

vs.

CITY OF GUNTOWN, Andrew Stuart in
their Individual and Official Capacities

Cause # 1:25-CV-24-GHD-DAS

**RECEIVED**

**JUL 2 8 2025**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

## PLAINTIFF'S OBJECTION TO MAGISTRATE'S ORDER DENYING
## MOTION TO STRIKE AFFIRMATIVE DEFENSES

### 1. INTRODUCTION

1.1. Plaintiff, Tracy Miller Arnold, respectfully objects to Magistrate Judge's July 14, 2025 Order[1] denying Plaintiff's Motion to Strike Affirmative Defenses. The Magistrate's ruling is contrary to law under Federal Rule of Civil Procedure 72(a) because it commits fundamental legal errors by treating categorically foreclosed defenses as mere pleading deficiencies and permits systematic procedural abuse that undermines the precedential force of Supreme Court decisions in civil rights enforcement.

### 2. STANDARD OF REVIEW AND TIMELINESS

2.1. Federal Rule 72(a) requires district judges to "modify or set aside any part of the order that is clearly erroneous or contrary to law." The Magistrate's denial presents pure questions of law subject to de novo review under the "contrary to law" standard. When magistrate judges misapply controlling legal precedent or ignore the distinction between pleading adequacy and legal sufficiency, their determinations warrant correction regardless of factual considerations.

---

[1]Doc. [37]

2.2. This objection is timely filed within fourteen days of service pursuant to Rule 72(a) and Local Uniform Civil Rule 72(a)(1)(A). The objection raises fundamental legal errors regarding the proper application of Rule 12(f) to defenses that binding Supreme Court precedent has categorically prohibited.

## 3. THE MAGISTRATE COMMITTED REVERSIBLE LEGAL ERROR BY TREATING LEGAL IMPOSSIBILITY AS A PLEADING STANDARD

### 3.1. THE FUNDAMENTAL DISTINCTION BETWEEN PLEADING ADEQUACY AND LEGAL SUFFICIENCY

3.1.1. The Magistrate's order fundamentally mischaracterizes Plaintiff's motion by applying *Woodfield v. Bowman*'s "fair notice"[2] pleading standard to defenses that Supreme Court precedent has rendered legally impossible. This represents a critical confusion between two distinct concepts under Rule 12(f): pleading adequacy versus legal sufficiency.

3.1.2. Federal Rule 12(f) permits striking "insufficient defense[s]," a term that encompasses both inadequately pleaded defenses and defenses that are legally impossible regardless of factual development. While the Magistrate correctly noted that *Woodfield* requires only "fair notice" for affirmative defenses, the order failed to recognize that certain defenses merit striking despite perfect pleading because controlling law renders them categorically unavailable as a matter of substantive law.

3.1.3. This distinction is not merely academic. When binding precedent establishes that particular defenses cannot succeed under any set of facts, Rule 12(f) serves its gatekeeper function by eliminating legally impossible defenses early in litigation. The

---

[2] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)

1946 Advisory Committee Notes explain that the rule "affords a specific method of raising the insufficiency of a defense," and courts properly apply a framework examining whether defenses can survive legal sufficiency challenges regardless of their pleading adequacy.

### 3.2. OWEN V. CITY OF INDEPENDENCE[3] ESTABLISHES BINDING SUBSTANTIVE LEGAL RULES

3.2.1. The Supreme Court's 1980 decision in *Owen v. City of Independence* creates the paradigmatic example of defenses rendered legally impossible by binding precedent. *Owen* held categorically that municipalities "may not assert the good faith of their officers as a defense" to § 1983 liability and that municipalities have no immunity from such claims. This prohibition extends to qualified immunity, absolute immunity, sovereign immunity, and good faith defenses when asserted by municipal defendants.

3.2.2. Justice Brennan's majority opinion rested on fundamental statutory and policy grounds that render municipal immunity defenses legally impossible in § 1983 actions. Statutorily, the Court held that § 1983 "creates a species of tort liability that, on its face, admits of no immunities."[4] Historically, municipalities enjoyed no tradition of immunity at common law when Congress enacted § 1983 in 1871. Most significantly, the Court emphasized that municipal immunity would undermine § 1983's dual purposes of compensation and deterrence.

3.2.3. The Court's subsequent decision in *Leatherman v. Tarrant County* reinforced this prohibition, explicitly stating that "municipalities do not enjoy immunity from suit—

[3]*Owen v. City of Independence*, 445 U.S. 622 (1980)
[4]Id., at 635

1   either absolute or qualified—under § 1983."[5] These decisions create binding substan-
2   tive law that renders municipal immunity defenses "insufficient as a matter of law"
3   within Rule 12(f)'s meaning, not mere pleading guidelines subject to fair notice analy-
4   sis.

### 3.3. THE MAGISTRATE'S ERROR: MISAPPLYING WOODFIELD'S FRAMEWORK

5   3.3.1. The Magistrate's Order commits legal error by treating all twenty affirmative
6   defenses uniformly without conducting the case-by-case analysis that *Woodfield*[6]
7   requires. The decision establishes two distinct categories: simple, well-understood
8   defenses where naming alone "may be sufficient," and complex defenses requiring
9   "enough specificity or factual particularity" to prevent unfair surprise.

10  3.3.2. Critically, the Magistrate applied *Woodfield*'s narrow exception as the general rule
11  without analyzing which of the twenty defenses might qualify for minimal pleading
12  versus which require factual development. The decision's statement that "merely
13  pleading the name of the affirmative defense may be sufficient" ignores that *Wood-*
14  *field* says this "may be sufficient" only "in some cases." The general rule remains that
15  defendants must provide "enough specificity or factual particularity" to give "fair
16  notice."

17  3.3.3. More fundamentally, the Magistrate's wholesale reliance on *Woodfield* ignores that
18  some defenses cannot provide fair notice regardless of factual detail because they are
19  legally impossible. When the Supreme Court categorically prohibits municipal immu-
20  nity defenses, no amount of factual articulation can cure the legal insufficiency. This

---

[5]*Leatherman v. Tarrant County*, 507 U.S. 163, 166 (1993)
[6]*Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) - case-by-case analysis requirement;
"may be sufficient" only "in some cases"

1  represents precisely the situation where Rule 12(f)'s gatekeeper function applies inde-

2  pendent of pleading standards.

### 4. SPECIFIC DEFENSES THAT ARE LEGALLY IMPOSSIBLE UNDER BINDING PRECEDENT

#### 4.1. MUNICIPAL IMMUNITY DEFENSES PROHIBITED BY OWEN

3  4.1.1. Defendants' Fourth Affirmative Defense asserts "qualified immunity, sovereign

4  immunity, absolute immunity, prosecutorial immunity, and legislative immunity"

5  without specifying which defendant claims which protection. To the extent the City

6  of Guntown relies on any immunity defense, *Owen* categorically forecloses such

7  claims regardless of how they might be pleaded.

8  4.1.2. *Owen*'s holding that municipalities "may not assert the good faith of their officers

9  as a defense" to § 1983 liability creates a bright-line rule that no factual development

10  can overcome. The Supreme Court emphasized that municipal immunity is "wholly

11  inapplicable, when the liability of the municipal entity is at issue"[7] and that § 1983's

12  "language is absolute and unqualified."[8] This represents legal impossibility, not a

13  pleading deficiency curable through more detailed factual allegations.

#### 4.2. GOOD FAITH DEFENSES DIRECTLY PROHIBITED

14  4.2.1. Defendants' Ninth Affirmative Defense asserting "good faith" and "honest belief"

15  directly violates *Owen*'s explicit holding. The Supreme Court rejected any municipal

16  defense premised on good faith, whether characterized as subjective good faith, rea-

17  sonable reliance on existing precedent, or innocent mistake of law. Unlike individual

---

[7]*Owen*, 445 U.S., at 638
[8]*Owen*, 445 U.S., at 635

1   officers who may claim qualified immunity based on good faith and reasonable
2   reliance on existing law, municipalities are strictly liable for constitutional violations
3   regardless of their officials' subjective intent.

### 4.3. STATE LAW BARRIERS PREEMPTED BY FEDERAL LAW

4   4.3.1. Several additional defenses are categorically foreclosed by Supreme Court prece-
5       dent. The Seventh Affirmative Defense invoking the Mississippi Tort Claims Act con-
6       flicts with *Felder v. Casey*, which held that "a state law that immunizes government
7       conduct otherwise subject to suit under § 1983 is pre-empted."[9] The Eleventh Affir-
8       mative Defense requiring exhaustion of administrative remedies contradicts *Patsy v.*
9       *Board of Regents*' explicit holding that "exhaustion of state administrative remedies
10      is not a prerequisite to an action under § 1983."[10] The Thirteenth Affirmative
11      Defense asserting adequate state remedies contradicts *Monroe v. Pape*'s foundational
12      principle that "the federal remedy is supplementary to the state remedy, and the state
13      remedy need not be sought and refused before the federal one is invoked."[11]

14  4.3.2. These are not pleading deficiencies requiring more factual detail. They are defenses
15      that binding Supreme Court precedent has definitively rejected, making them "insuf-
16      ficient as a matter of law" under Rule 12(f) regardless of their factual articulation.

### 5. THE ORDER UNDERMINES THE PRECEDENTIAL FORCE OF SUPREME COURT DECISIONS

### 5.1. SYSTEMATIC PROBLEMS CREATED BY ALLOWING LEGALLY FORECLOSED DEFENSES

17  5.1.1. The Magistrate's ruling creates systematic problems extending beyond this individ-

---

[9]*Felder v. Casey*, 487 U.S. 131, 139 (1988)
[10]*Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982)
[11]*Monroe v. Pape*, 365 U.S. 167, 183 (1961)

1    ual case by permitting defendants to relitigate constitutional principles that the

2    Supreme Court definitively resolved over four decades ago. When municipalities can

3    assert immunity defenses despite *Owen*'s categorical prohibition, they effectively

4    treat binding precedent as pleading guidelines rather than substantive legal rules.

5    5.1.2. This approach forces courts to repeatedly address issues already definitively

6    resolved, misallocating judicial resources and weakening the deterrent effect of

7    adverse constitutional rulings. The practice particularly burdens civil rights plaintiffs

8    who must expend limited resources responding to claims that controlling precedent

9    has already rejected, creating systematic barriers to constitutional enforcement.

10    5.1.3. Section 1983 serves as the primary vehicle for enforcing constitutional rights against

11    state and local officials. When defendants can delay proceedings and increase costs

12    through legally impossible defenses, they effectively undermine access to constitu-

13    tional remedies. This consequence contradicts Congress's explicit intent in creating

14    accessible federal civil rights enforcement mechanisms.

### 5.2. RULE 12(F) AS GATEKEEPER AGAINST PREDETERMINED OUTCOMES

15    5.2.1. Federal Rule 12(f) exists precisely to prevent defendants from asserting defenses that

16    waste judicial resources on predetermined outcomes. When binding precedent cate-

17    gorically forecloses a defense, it fails the legal sufficiency test regardless of pleading

18    adequacy. Municipal immunity defenses post-*Owen* represent the paradigmatic

19    example of legally impossible defenses that merit striking despite adequate pleading.

20    5.2.2. The rule serves judicial economy by eliminating defenses that cannot succeed under

21    any set of facts rather than forcing unnecessary litigation of settled legal questions.

1  Courts properly strike defenses when they are "insufficient as a matter of law," a
2  standard that applies when controlling precedent makes success impossible regardless
3  of factual development.

## 6. DEFENDANTS' SYSTEMATIC PLEADING VIOLATIONS CREATE SUBSTANTIAL PREJUDICE

### 6.1. JOINT REPRESENTATION MAKES FAIR NOTICE IMPOSSIBLE

4  6.1.1. The Magistrate's Order fails to address fundamental problems created by Defen-
5  dants' joint representation, where it becomes impossible to determine which defen-
6  dant asserts which defense despite many defenses being legally applicable to only one
7  defendant. This structural ambiguity creates systematic fair notice problems that per-
8  meate all twenty affirmative defenses.

9  6.1.2. The City cannot claim qualified immunity under *Owen*, while individual defendant
10  Stuart potentially can. The City must argue Stuart acted outside policy to avoid *Mon-*
11  *ell*[12] liability, while Stuart must argue he acted according to policy for immunity pur-
12  poses. These contradictory positions cannot be simultaneously true, yet both are
13  asserted without specifying which defendant relies on which theory.

14  6.1.3. This conflict-driven ambiguity makes fair notice impossible regardless of pleading
15  detail. Even perfectly articulated defenses would remain fundamentally defective if
16  they continued asserting incompatible theories without specifying which defendant is
17  asserting which defense. Only clear delineation of which defendant asserts each
18  defense can provide the fair notice that *Woodfield* requires.

---

[12]*Monell v. Department of Social Services*, 436 U.S. 658 (1978)

## 6.2. The Improper "Reservation" Defense

6.2.1. Defendants' Fourteenth Affirmative Defense attempting to "reserve all available defenses under Federal Rule of Civil Procedure 8(c)" is not a proper affirmative defense but an improper attempt to circumvent Rule 8(c)'s waiver provisions. Federal Rule 12(h) provides the exclusive mechanism for preserving defenses, and defendants cannot create their own preservation system outside this framework.

6.2.2. This "reservation" particularly prejudices pro se plaintiffs by forcing discovery on every conceivable defense theory, directly violating Rule 1's mandate for "just, speedy, and inexpensive determination." When defendants preserve "all available defenses," plaintiffs must conduct discovery on every conceivable theory of defense, dramatically expanding litigation scope and cost. This transforms litigation from substantive adjudication into procedural warfare designed to exhaust plaintiff resources.

# 7. CONSTITUTIONAL CONCERNS REQUIRE CAREFUL JUDICIAL SCRUTINY

## 7.1. Due Process Implications of Systematic Procedural Barriers

7.1.1. The Magistrate's Order permits systematic procedural abuse that creates fundamentally different litigation experiences based solely on wealth and legal sophistication. When institutional defendants deploy twenty conclusory defenses against pro se plaintiffs, the resulting burden shifts from substantive constitutional adjudication to resource exhaustion warfare.

7.1.2. Federal courts face constitutional obligations to prevent systematic abuse when extreme resource disparities create insurmountable barriers to civil rights enforcement. When empirical evidence demonstrates that pro se plaintiffs win only four per-

cent of cases while facing systematic procedural barriers that represented plaintiffs do not encounter, these disparities suggest constitutional violations requiring judicial intervention.

### 7.2. THE DOUBLE WAIVER PROBLEM FOR PRO SE CIVIL RIGHTS PLAINTIFFS

7.2.1. This case exemplifies systematic problems where Federal Rules create impossible procedural burdens for pro se plaintiffs enforcing constitutional rights. Plaintiff faces a "double waiver trap" requiring procedural perfection: Rule 12(f) requires challenging defective affirmative defenses within twenty-one days or forever waive objections, while Rule 72(a) requires objecting to magistrate errors within fourteen days or forever waive appellate review rights.

7.2.2. This systematic burden violates due process by making constitutional rights contingent on procedural sophistication that individual plaintiffs cannot reasonably achieve when facing institutional defendants who systematically deploy legally frivolous defenses. Here, Defendants asserted defenses categorically foreclosed by *Owen*, *Felder*, *Monroe*, and *Patsy*—clear Supreme Court precedent that should require no research to identify. Yet the Federal Rules force pro se plaintiffs to expend limited resources repeatedly proving obvious legal points or lose fundamental procedural protections forever.

### 8. THE ORDER CONTRADICTS CONGRESSIONAL INTENT IN § 1983

8.1. Congress designed § 1983 to provide accessible federal remedies when "by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be

enforced."[13] The legislative history reveals Congress's determination that federal civil rights enforcement required accessible procedures, with the 1871 Congress stating it was "better to invade the judicial power of the State than permit it to invade, strike down, and destroy the civil rights of citizens."[14]

8.2. *Leatherman v. Tarrant County* explicitly rejected "heightened pleading standards" for § 1983 claims, emphasizing that Rule 8(a)(2) requires only "a short and plain statement of the claim." While *Twombly*[15] and *Iqbal*[16] established universal pleading standards, *Leatherman*'s core principle remains: civil rights claims cannot be subjected to discriminatory procedural barriers. When defendants assert legally frivolous affirmative defenses while knowing that challenging such systematic violations requires resources individual plaintiffs cannot marshal, this practice contradicts both *Leatherman* and § 1983's fundamental accessibility principles.

8.3. The Magistrate's ruling enables systematic undermining of congressional intent by permitting procedural complexity that prevents meritorious civil rights claims from reaching substantive adjudication. When institutional defendants can systematically deploy legally foreclosed defenses while knowing that pro se plaintiffs lack resources to challenge obvious violations, they effectively transform constitutional enforcement from accessible federal remedy into expensive procedural warfare.

## 9. QUESTIONS OF FIRST IMPRESSION REQUIRE INDEPENDENT REVIEW

9.1. This case presents constitutional questions regarding federal courts' obligations when

---

[13]*Monroe*, 365 U.S. at 180
[14]*Briscoe v. LaHue*, 460 U.S. 325, 360 (1983)
[15]*Bell Atlantic Cory. v. Twombly*, 550 U.S. 544 (2007)
[16]*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

systematic procedural barriers undermine civil rights enforcement. The convergence of pro se litigation, systematic procedural abuse, and legally impossible defenses presents questions requiring independent judicial determination rather than routine deference.

9.2. When magistrate orders effectively permit systematic procedural warfare that transforms constitutional enforcement from accessible federal remedy into resource exhaustion contests, such rulings may be "contrary to law" under constitutional due process principles and congressional intent in § 1983. These questions of first impression warrant careful district court analysis rather than magistrate-level summary disposition.

## 10. THIS OBJECTION IS AND IS NOT ABOUT

### 10.1. THIS OBJECTION IS NOT ABOUT:

10.1.1. This objection is not about pleading details.

10.1.2. This objection is not about having a motion denied.

10.1.3. This objection is not about special treatment.

### 10.2. THIS OBJECTION IS ABOUT:

10.2.1. This objection challenges defenses that Supreme Court precedent has categorically prohibited. No amount of factual development can resurrect *Owen*-prohibited municipal immunity defenses or overcome the explicit holdings in *Patsy*, *Monroe*, and *Felder*. This represents legal impossibility, not pleading inadequacy.

10.2.2. *Woodfield* requires case-by-case analysis that the Magistrate failed to conduct. The decision applied the narrow exception as the general rule without analyzing

1    which defenses merit minimal pleading versus which require factual development.

2    More fundamentally, *Woodfield*'s pleading standard cannot cure defenses that are

3    legally impossible under binding precedent.

4   10.2.3. Rule 12(f) exists precisely to eliminate impossible defenses early rather than waste

5    resources on predetermined outcomes. The rule's twenty-one day deadline creates a

6    use-it-or-lose-it framework that cannot be deferred to dispositive motions. Judicial

7    economy demands early elimination of legally impossible defenses rather than forcing

8    unnecessary litigation of settled constitutional principles.

## 11. CONCLUSION AND RELIEF REQUESTED

9   The Magistrate's July 14, 2025 Order denying Plaintiff's Motion to Strike Affirmative

10  Defenses is contrary to law because it treats legally impossible defenses as mere pleading de-

11  ficiencies, misapplies *Woodfield*'s framework by treating narrow exceptions as general

12  rules, and permits systematic procedural abuse that undermines the precedential force of

13  Supreme Court decisions while contradicting congressional intent in § 1983.

14  The order enables institutional defendants to deploy legally foreclosed defenses against

15  individual civil rights plaintiffs while knowing that challenging such systematic violations

16  requires procedural sophistication and resources that most pro se plaintiffs cannot marshal.

17  This creates wealth-based barriers to constitutional enforcement that violate due process

18  principles and transform accessible federal civil rights remedies into expensive procedural

19  warfare favoring institutional defendants.

20  WHEREFORE, Plaintiff respectfully requests this Court:

1. SUSTAIN this objection and REVERSE the Magistrate's July 14, 2025 Order;

2. GRANT Plaintiff's Motion to Strike Affirmative Defenses, specifically STRIKING WITH PREJUDICE Defendants' Fourth Affirmative Defense (immunity claims by City of Guntown), Seventh Affirmative Defense (Mississippi Tort Claims Act), Ninth Affirmative Defense (good faith), Eleventh Affirmative Defense (failure to exhaust), Thirteenth Affirmative Defense (adequate state remedy), and Fourteenth Affirmative Defense (improper reservation) as categorically foreclosed by binding Supreme Court precedent or procedurally improper;

3. STRIKE WITHOUT PREJUDICE all remaining affirmative defenses that fail *Woodfield* notice requirements when evaluated from the pro se plaintiff's perspective, with leave for Defendants to re-plead only those defenses supported by factual allegations and legal authority;

4. REQUIRE that any re-pleading specify which defendant asserts which defense to cure fair notice violations created by joint representation of parties with conflicting interests; and

5. GRANT such other relief as this Court deems just and proper.

Respectfully submitted this 28th day of July, 2025.

Tracy Miller Arnold
Pro Se
423-529-4335
PO Box 864
Savannah, Tennessee 38372
tracy.knightswife@gmail.com

14 of 14

RECEIVED

## CERTIFICATE OF SERVICE

JUL 2 8 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

I certify that on July 28, 2025, a copy of the following:

PLAINTIFF'S OBJECTION TO MAGISTRATE'S ORDER DENYING MOTIONS TO STRIKE
AFFIRMATIVE DEFENSES

was served by mail to the following attorneys representing Defendants City of Guntown and Andrew Stuart via *USPS* to:

Sonya Dickson
Phelps Dunbar LLP
1905 Community Bank Way
Suite 200
Flowood, MS 39232
sonya.dickson@phelps.com
Tracking #

G510 8160 2726
5209 1988 45

Todd Butler
Phelps Dunbar LLP
1905 Community Bank Way
Suite 200
Flowood, MS 39232
todd.butler@phelps.com
Tracking #

same

Tracy Miller Arnold
Pro Se
423-529-4335
PO Box 864
Savannah, Tennessee 38372
tracy.knightswife@gmail.com